Robert Walter **FISCHER**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 04–05–00834–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 24, 2007.

Franklyn Mick Mickelsen, Broden & Mickelsen, Dallas, TX, for Appellant.

Scott Roberts, Assistant Criminal District Attorney, San Antonio, TX, for Appellee.

Sitting: SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

This court's opinion and judgment dated September 5, 2007 are withdrawn and this opinion and judgment are substituted. We substitute this opinion to clarify issues relating to this court's review of the trial court's ruling.

Appellant Robert Fischer was convicted by a jury of the murder of Edith Camp and sentenced to ninety-nine years imprisonment. Fischer presents three issues for review: (1) improper admission of extraneous offense evidence regarding the theft of a firearm; (2) factual insufficiency of the evidence; and (3) improper admission of hearsay evidence. Because we find the trial court erred in admitting the evidence regarding the theft of the firearm based on the proffer presented to the trial court, we reverse the trial court's judgment and remand the cause to the trial court for a new trial.[1]

### FACTUAL BACKGROUND

On May 26, 2003, sixty-nine-year-old Edith Camp was in her home when she was killed by a gun shot to the back of her head. Cash and valuables were taken from the home. Ballistics tests showed a distinctive firing pattern consistent with that of a .22 caliber Cricket Keystone rifle. Neither the murder weapon nor items taken from the residence were recovered.

The State's case was based entirely on circumstantial evidence. Several months before the murder, Mrs. Camp was apparently upset with Fischer, her nephew, and told a friend that she intended not to provide Fischer with any further financial support. A few days prior to the murder, Mrs. Camp stated that Fischer "gave her the creeps." Two weeks after the murder, a .22 caliber Cricket rifle was discovered missing from the Boerne Wal–Mart where Fischer was a support manager. Ed Love, Jr., a firearms examiner with the Bexar County Crime Lab, subjected a Cricket rifle, with the serial number immediately following that of the stolen firearm, to ballistics tests. Love testified that the slug recovered from the scene of the murder was fired from a Cricket rifle identical or very nearly identical to the rifle taken from Wal–Mart. In an attempt to link Fischer to the murder, the State presented evidence suggesting that Fischer stole the .22 Cricket rifle from the Boerne Wal–Mart as part of his plan to murder Mrs. Camp.

### ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

Fischer argues the trial court erred in admitting the evidence relating to the theft of the Cricket rifle from Wal–Mart. The State made an oral proffer to the trial court of the extraneous theft evidence it intended to introduce. Fischer objected to the admission of the extraneous offense on the grounds of relevance, that its probative value was outweighed by its unfair prejudice, and that the evidence was insufficient to support its admission as an extraneous offense. The trial court overruled Fischer's objections, and testimony regarding the theft was admitted during the guilt-innocence phase of trial.

### 1. Standard of Review

"A trial court's actions as to the admissibility of extraneous offense evi-

---

1. We do not address Fischer's remaining issues because they are not necessary to the final disposition of this appeal. *See* TEX.R.APP. P. 47.1.

dence is reviewed under an abuse of discretion standard." *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex.Crim.App.1996). As long as the trial court's ruling is within the "zone of reasonable disagreement" and is not arbitrary or unreasonable, there is no abuse of discretion and the trial court's ruling will be upheld. *See Rachal v. State*, 917 S.W.2d 799, 807 (Tex.Crim.App.1996).

### 2. Analysis

■ Extraneous offense evidence is admissible if the trial court determines: (1) the evidence is relevant to a material issue in the case; (2) the evidence is relevant apart from character conformity; and (3) the probative value of the evidence substantially outweighs the danger of unfair prejudice. *Montgomery v. State*, 810 S.W.2d 372, 386–87 (Tex.Crim.App.1990). In this appeal, Fischer concedes that the evidence of the theft, if proven, is not purely character evidence but is relevant as to plan or motive and that the evidence is not overly prejudicial. Fischer argues that the trial court abused its discretion in admitting the evidence because, prior to the admission of the evidence, there was insufficient proof for the trial court to determine that a jury could reasonably find beyond a reasonable doubt that he committed the extraneous offense. The issue, in this case, focuses on the first prong of the initial determination of relevancy. In order to make this determination we must explore Rule 104(b). TEX.R. EVID. 104(b).

■ Texas Rule of Evidence 104(b) governs the admissibility of evidence that is not relevant unless other connecting facts are proven. TEX.R. EVID. 104(b). "[I]n deciding whether to admit extraneous offense evidence ... the trial court must, under Rule 104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *Harrell v. State*, 884 S.W.2d 154, 160 (Tex. Crim.App.1994). Proof of a culpable connection between the accused and the extraneous offense is an essential precondition to establishing the relevance of the extraneous offense. *Id.* at 157.

Much like in *Harrell*, the conditional fact that the trial court was required to determine in this case, was whether a jury could reasonably find beyond a reasonable doubt that Fischer committed the theft of the firearm. *Id.* at 160. If a jury could determine that Fischer unlawfully appropriated the Cricket rifle with an intent to deprive the owner of the property, then the evidence was relevant and admissible.[2] *Id.; see also* TEX. PEN.CODE ANN. § 31.03 (Vernon 2003). Otherwise, the evidence was irrelevant and therefore inadmissible under Rules 104(b) and 402. TEX.R. EVID. 104(b) & 402; *Harrell*, 884 S.W.2d at 160. As long as the trial court's decision-that a jury could reasonably find beyond a reasonable doubt that Fischer committed the extraneous offense-was within the zone of reasonable disagreement, we must affirm the trial court's decision.

In determining whether the trial court abused its discretion, we believe a legal sufficiency review is instructive.[3] When

---

**2.** Texas Rules of Evidence 401, 403, and 404(b) would remain applicable, however, in this appeal these rules are not at issue.

**3.** In general, we recognize that the Texas Court of Criminal Appeals has stated that a "no-evidence standard of review is not the proper test" in determining the admissibility of the evidence. *Gigliobianco v. State*, No.

1851–03, 2004 WL 3092759 *1 (Tex.Crim. App. May 19, 2004). Here, however, the trial court's decision on the admissibility of the evidence requires a determination that a jury could reach the prescribed quantum of proof, beyond a reasonable doubt. This quantum of proof is met by legally sufficient evidence. *See Williams v. State*, 937 S.W.2d 479, 482

reviewing legal sufficiency of the evidence to support a criminal conviction, this court examines whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim.App.2007). This standard of review is the same whether the evidence is direct, circumstantial, or both. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App.1999). Thus, under this standard of review, if we conclude that no rational trier of fact could have found the essential elements of the alleged theft based on the State's proffer, then the trial court could have only concluded the same. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996) (stating that a rational trier of fact could find the essential elements of the offense beyond a reasonable doubt when there is legally sufficient evidence). If the trial court determined otherwise, then we must conclude that the trial court's decision was outside the zone of reasonable disagreement and thus, it abused its discretion.

■ During Fischer's pretrial motion in limine, the trial court elected and the parties agreed, to address the admissibility of the extraneous offense evidence to be adduced during trial under Rule 404(b) by oral proffer.[4] The proffer was made before opening statements and any presentation of evidence, and was only preceded by voir dire in which both the trial court and the prosecutor acknowledged that no statements regarding the facts of the case could be made.

The State's proffer included the details of the investigation into the nature of the murder weapon. During its proffer, the State argued that the evidence would show:

(1) Fischer worked at a Wal–Mart where a weapon was stolen;

(2) a ballistic expert "can eliminate as an exact match any other firearm other than the one that was stolen from the Wal–Mart during the time that [Fischer] was working there with access to it;"

(3) Fischer was seen at the gun locker shortly before the murder;

(4) there were between nine to fourteen keys to the gun locker and only people in management had access to the gun locker;

(5) Fischer had a key to the gun locker;

(6) "the sporting goods manager will testify that she remembered seeing [the missing gun] two weeks before the last inventory, . . ., four or five days before the murder;"

(7) Fischer mentioned that Wal–Mart was selling a small child's rifle; and

(8) that Wal–Mart had never experienced a stolen weapon.

Based on the proffer, the only link between Fischer and the theft is that he was one of possibly fourteen managers with a key to the gun locker and that he "mentioned" that Wal–Mart was selling a small child's rifle. Although the proffer may well have identified Fischer as one of several possible suspects in the theft of the gun, the proffer falls short of providing

---

(Tex.Crim.App.1996). Although the dissent criticizes the legal sufficiency review, it embarks on such an analysis merely concluding that the State's proffer contains sufficient evidence by which a jury could find Fischer stole the Cricket rifle.

**4.** *See Arzaga v. State*, 86 S.W.3d 767, 781 (Tex.App.-El Paso 2002, no pet.) (noting trial court can satisfy its responsibility to make initial determination that jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense by oral or written proffer).

legally sufficient evidence to allow the trier of fact to reasonably find that Fischer committed the offense.

*Harrell* describes the procedure to be utilized by the trial court in the admission of extraneous offenses. At the time of the proffer, there was legally insufficient evidence that Fischer committed the extraneous offense. Therefore, the trial court could only conclude that a jury could not reasonably find beyond a reasonable doubt that Fischer committed the extraneous offense. Because the trial court reached a decision outside the zone of possibilities, we must conclude that the trial court abused its discretion.

### 3. Harm Analysis

■ Having determined that the trial court erred in admitting evidence of the extraneous offense, we must determine whether the record establishes that Fischer was harmed by its admission. The erroneous admission of an extraneous offense is not constitutional error. *Avila v. State*, 18 S.W.3d 736, 741–42 (Tex.App.-San Antonio 2000, no pet.). We disregard a nonconstitutional error unless it affects a substantial right. Tex.R.App. P. 44.2(b).

■ An error affects a substantial right when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Russell v. State*, 113 S.W.3d 530, 549 (Tex.App.-Fort Worth 2003, pet. ref'd). We must consider the trial court's erroneous admission of the extraneous offense evidence in the context of the entire record and not just whether there was sufficient or overwhelming evidence of the defendant's guilt. *Motilla v. State*, 78 S.W.3d 352, 357–58 (Tex.Crim. App.2002); *Russell*, 113 S.W.3d at 550. We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral impli-cations, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim.App.1989); *McQuarters v. State*, 58 S.W.3d 250, 258 (Tex.App.-Fort Worth 2001, pet. ref'd). We do not focus upon the propriety of the outcome, but on the integrity of the process leading to the conviction, and determine if the error disrupted the jury's evaluation of the evidence. *Harris*, 790 S.W.2d at 587–88; *Russell*, 113 S.W.3d at 550.

■ A review of the entire record in this case reveals that significant time was devoted at trial to developing the evidence surrounding the theft of the Cricket rifle from the Wal–Mart. According to the State's expert, the stolen Cricket rifle and the murder weapon were likely one and the same. The theft of the Cricket rifle is the only evidence linking Fischer to the murder weapon. It was this evidence of the theft that allowed the jury to reasonably conclude that Fischer possessed the murder weapon. At oral argument, the State took the position that the evidence of the theft of the Cricket rifle was "mutually interconnected" with the murder charge. Moreover, the State acknowledged that excluding the evidence of the theft would make proving the murder charge difficult, if not impossible. Given the time spent during trial, the value of the evidence, and the State's heavy emphasis at closing, it is likely that the jury placed great weight on the link between the stolen Cricket rifle and the murder in finding Fischer guilty.

In this case, the difficulty of the harm analysis arises from the admission of additional evidence beyond the proffer during trial. The State urges there is no harm because, even if the proffer was initially deficient, evidence submitted after the proffer, connecting Fischer to the missing

rifle, was sufficient to allow the jury to find Fischer committed the theft beyond a reasonable doubt. The additional evidence connected the Cricket rifle to the murder victim, who was Fischer's aunt, and additional testimony described a strained familial relationship between Fischer and the murder victim. Yet, if the court had correctly excluded the evidence described in the proffer, the jury would not have heard any of the evidence linking Fischer to the Cricket rifle reportedly stolen from Wal–Mart. The purpose of the procedure described in *Harrell* is to prevent the introduction of irrelevant extraneous offense evidence. Thus, if we agreed with the State's argument that we may consider unrelated evidence submitted after the proffer to cure the deficiency of the proffer, then we defeat the purpose described in *Harrell.* Because we are bound to follow *Harrell,* we decline to accept the State's argument. Having considered the record as a whole, we conclude that the erroneous admission of the extraneous offense evidence had a substantial and injurious effect or influence on the jury's verdict thereby affecting Fischer's substantial rights.

### CONCLUSION

The trial court's judgment is reversed, and the cause is remanded to the trial court for a new trial.

Dissenting opinion by PHYLIS J. SPEEDLIN, Justice.

The dissenting opinion issued on September 5, 2007 is withdrawn and this dissenting opinion is substituted to respond to

the modifications made to the majority opinion.

I disagree with the majority's conclusion that the trial court's admission of the extraneous offense evidence, *i.e.,* the rifle theft, during the guilt/innocence phase was error. As noted by the majority, Fischer only challenges "the question of threshold admissibility" that the trial court made under Rule 104(b). Tex.R. Evid. 104(b). Specifically, Fischer maintains the trial court should not have admitted evidence of the rifle theft because "no reasonable fact finder" could conclude beyond a reasonable doubt that Fischer had stolen the missing Cricket rifle from the Wal–Mart at which he worked based solely on the State's proffer.

In 1994, our Court of Criminal Appeals held that before a trial court could admit evidence of an extraneous offense during the guilt/innocence phase of trial, "the trial court must, under rule 104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *Harrell v. State,* 884 S.W.2d 154, 160 (Tex. Crim.App.1994) (stating that "the proper quantum of proof" to be used by the trial court in determining the admissibility of extraneous offense evidence is the same as that used by the jury—*i.e.,* beyond a reasonable doubt, rather than a "clear showing" or a preponderance of the evidence). This principle was refined in *Mitchell v. State,* 931 S.W.2d 950 (Tex.Crim.App. 1996), a case involving the admission of extraneous offense evidence during the punishment phase of trial,[1] in which the

---

1. The majority opinion relies on several punishment phase cases dealing with admissibility of extraneous offense evidence. We note, as the Court of Criminal Appeals has noted, that while the standard of proof for extraneous offenses is the same for both phases of

trial, *i.e.,* beyond a reasonable doubt, the relevancy of the extraneous offense evidence serves a different purpose in each phase of trial. *Mitchell,* 931 S.W.2d at 954 (stating that while "... the use of extraneous offenses during the punishment phase should be anal-

court clarified the different functions of the judge and jury with respect to extraneous offense evidence. "Consequently, we find that the trial court is deemed the authority on the threshold issue of admissibility of relevant evidence during the punishment phase of a trial, while the jury, as the 'exclusive judge of the facts,' *i.e.* finder of fact, determines whether or not the burden of proof for those offenses presented has been satisfied by the party offering the evidence." *Id.* at 953.

In reviewing a trial court's decision to admit evidence of an extraneous offense, it is well established that we apply an abuse of discretion standard. *See Harrell*, 884 S.W.2d at 161 n. 14 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)); *see also Wheeler v. State*, 67 S.W.3d 879, 888 (Tex.Crim.App.2002). In fact, the *Montgomery* court spoke at length when establishing the guidelines for reviewing a trial court's ruling on Rule 404(b) evidence:

> ... appellate courts uphold the trial court's ruling on appeal absent an 'abuse of discretion.' That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. The trial court's ruling is not, however, unreviewable. Where the appellate court can say with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit that evidence. Moreover, when it is clear to the appellate court that what was perceived

by the trial court as common experience is really no more than the operation of a common prejudice, not borne out in reason, the trial court has abused its discretion.

*Montgomery*, 810 S.W.2d at 391. Accordingly, as long as the trial court's ruling is within the "zone of reasonable disagreement" and is not arbitrary or unreasonable, there is no abuse of discretion and the trial court's ruling should be upheld. *Id.*

Here, the State and Fischer made an oral proffer of essentially stipulated evidence concerning the rifle theft outside the presence of the jury prior to opening statements. The record reveals the following facts were before the trial court at the time of its ruling on the admissibility of the extraneous offense evidence:

(1) A .22 caliber "Cricket" rifle was missing from the Wal–Mart at which Fischer worked;

(2) The rifle was removed from the store inventory sometime between May 20 and June 4, 2003 (the decedent was murdered on May 26, 2003);

(3) A .22 caliber rifle bullet was used to cause the death of the victim, and that bullet was impressed with a rifle barrel with a right hand twist and "twelve lands and grooves;"

(4) No .22 caliber rifle in the State's firearm expert database fit this pattern; and the .22 caliber Cricket type of rifle missing from the Wal–Mart was not in the State's database;

(5) The rifle with the serial number next in the series to that of the missing rifle was located in a Wal–Mart in Florida,

ogous to that of the guilt/innocence phase of a trial regarding burden of proof [,][t]he use of evidence of extraneous offenses during the guilt/innocence phase is used to prove 'motive, opportunity, intent, preparation, plan,

knowledge, identity or absence of mistake or accident' [while] [d]uring the punishment phase, evidence of an extraneous offense is offered to assist the trial court or the jury in determining punishment").

and upon test firing made the same impression on the bullet as the murder weapon made on the bullet that killed the victim;

(6) To the State's firearm expert's knowledge, the only kind of gun that could have been used to kill the victim was a Cricket .22 caliber rifle;

(7) The only people with access to the rifles at Wal–Mart were the managers and there existed between nine and fourteen keys to the gun locker;

(8) Fischer had a key and had access to the gun locker as an associate manager; and

(9) Fischer was seen opening the gun locker "some time" before the murder and mentioned at the time that he knew there was a "small child's rifle" being sold by Wal–Mart.

At the hearing, Fischer objected to the admission of evidence related to the stolen Cricket rifle on the basis that it was not relevant and was unfairly prejudicial because "no one puts the rifle in Mr. Fischer's hand," "we don't know that he's the one that took it," and "we don't know when it was taken." In making its ruling, the trial judge stated, "[s]o we're doing this based upon what his [the prosecutor's] good faith belief of the evidence is. If at some point during this trial it turns out that's not the case . . .—then you have an appropriate remedy . . . But at this point . . . under the 404(b) proffer, I'll admit it on the case in chief, finding that the probative outweighs the prejudicial." When defense counsel questioned whether the court was also determining that "the extraneous offense is admissible beyond a reasonable doubt," the judge replied, "[a]t this time I'm going to say that based on the proffer. Now, once again, I've left you

your outlet on that, depending on what the testimony reveals." Thus, the record confirms that the trial court made a threshold decision under Rule 104(b) to admit the extraneous offense evidence dependent on the fulfillment of a condition of fact, *i.e.,* that the State prove that Fischer committed the theft of the rifle. *See* Tex.R. Evid. 104(b); *see Harrell,* 884 S.W.2d at 160 (stating that in that case the "conditional fact" was whether the appellant committed the extraneous offenses depicted in the state's exhibit, and stating that, "[i]f appellant committed the extraneous offense, the evidence is relevant and admissible, provided it is not too prejudicial and is offered for a proper purpose . . . [h]owever, if appellant did not commit the extraneous offense[s], the evidence is irrelevant and therefore inadmissible"). During trial, the evidence concerning the theft of the rifle was admitted through several different witnesses' testimony. There was no further objection by Fischer during trial, or through motion for directed verdict, raising the State's purported failure to prove that he committed the rifle theft.[2]

On appeal, Fischer concedes the evidence of the rifle theft is probative of "preparation or plan" and is not "unfairly prejudicial." *See* Tex.R. Evid. 404(b), 403; *see also Montgomery,* 810 S.W.2d at 387 (extraneous offense evidence that meets permissible purposes of Rule 404(b) is "relevant" beyond tendency to show character conformity and is therefore admissible subject only to a Rule 403 analysis). However, Fischer still maintains the State's proffer lacked the necessary "threshold quantum of proof" for admissibility before the jury. He argues the only evidence the State produced at the proffer with respect

---

**2.** It is also notable that Fischer does not challenge the legal sufficiency of the evidence to support his murder conviction on appeal.

to the missing Cricket rifle was the fact that it was "missing from the Wal–Mart store inventory near the time of the murder, Mr. Fischer worked at the store, was one of approximately sixteen [sic] managers who had a key to the store gun bunker, and a fellow employee recalled that he once had mentioned or expressed interest in that particular gun." Fischer maintains, and the majority apparently agrees, that based on this "scant evidence," no reasonable fact finder could conclude beyond a reasonable doubt that he had stolen that firearm, and that it was thus error for the court to admit it into evidence. After applying the abuse of discretion standard of review to the trial court's threshold determination as to the admissibility of the evidence, I respectfully disagree.

The dispositive issue appears to be the proper interplay between *Harrell's* mandate that the trial court must make an "initial determination" that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense, and an appellate court's mandate to review a trial court's decision to admit such evidence under an abuse of discretion standard. *See Harrell,* 884 S.W.2d at 160, 161–62 n. 14. My reading of *Harrell* and *Mitchell,* and the subsequent cases applying them, is that the trial judge, in ruling on the admissibility of the extraneous offense evidence, does not engage in a weighing of the evidence or a credibility evaluation, which are within the jury's sole province, but only makes a threshold determination of relevance, *i.e.,* whether a reasonable fact finder could find the defendant committed the extraneous offense beyond a reasonable doubt. *See Harrell,* 884 S.W.2d at 159–60 (contrasting the trial court's duty under Rule 104(a) to make a "preliminary finding" of fact, with its duty under Rule 104(b) to make an " 'initial determination' as to the relevancy of the evidence, dependent 'upon the fulfill-

ment of a condition of fact' "); *see also Mitchell,* 931 S.W.2d at 956 (Clinton, J., concurring) (characterizing *Harrell* as "acknowledg[ing] that proof of a defendant's culpability for an extraneous crime is not a preliminary question of fact to be resolved by the trial judge under Rule 104(a), but is a condition of relevancy to be resolved by the jury under Rule 104(b)"). In turn, on appeal of the trial court's ruling under Rule 104(b), we as a reviewing court do not engage in a re-weighing of the evidence as a form of sufficiency analysis. Rather, we consider only whether the trial court applied the correct law and whether its ruling falls outside the zone of reasonable disagreement, *i.e.,* whether its ruling was arbitrary and without reference to guiding principles. *See Montgomery,* 810 S.W.2d at 391.

The majority, while claiming that it is applying an abuse of discretion standard, actually engages in an improper legal sufficiency analysis, re-weighing the strength of the State's proffer and superimposing its own judgment over that of the trial court. *See id.* at 390–91 (rejecting suggestion that appellate court may substitute its own judgment for that of trial court as to relevance). The majority acknowledges in a footnote that the Texas Court of Criminal Appeals has held that a no-evidence or legal sufficiency analysis is not the proper standard of review for determining the relevance, and thus admissibility, of evidence. *See Stewart v. State,* 129 S.W.3d 93, 96 (Tex.Crim.App.2004). However, the majority then notes its belief that a legal sufficiency review is "instructive," spends the rest of the paragraph explaining the parameters of a legal sufficiency review, and then proceeds to apply a legal sufficiency analysis to the proffer, ultimately concluding that, "[a]t the time of the proffer, there was legally insufficient evidence that Fischer committed the extraneous of-

fense" before holding the trial court "abused its discretion." I strongly disagree that this constitutes a proper application of the abuse of discretion standard in the context of this case, and thus will engage in my own abuse of discretion analysis.

As previously stated, the trial court did apply the correct guiding principle in making its threshold ruling as to relevance under Rule 104(b). Therefore, I now examine the State's proffer only to determine whether the court's decision to admit the evidence was arbitrary or capricious. See Montgomery, 810 S.W.2d at 391. Here, the State proffered circumstantial evidence that Fischer planned and carried out the theft of the Cricket rifle in order to gain possession of the firearm to commit the charged murder. Included within the proffer was evidence that the missing Cricket rifle was taken at or near the time of the murder, and in fact matched the weapon used to commit the murder. The proffer further establishes that the missing Cricket rifle was kept inside a locked gun locker at Wal–Mart; therefore, only a limited group of people would have had access to the murder weapon. In addition, the proffer showed that, in his capacity as a support manager at the Wal–Mart, Fischer had a key to the gun locker, and thus he had access to the locker and had the opportunity to steal the rifle. Finally, based on his own comments to a witness during the period of time in which the State believed the weapon was stolen, Fischer had personal knowledge of the Cricket rifle's existence and expressed an interest in it before the murder.

Although ·the proffer does not directly place the missing rifle in Fischer's hands, the proffer certainly connects Fischer to the missing gun, and, as such, has a "tendency to make the existence of a fact of consequence more or less probable." Montgomery, 810 S.W.2d at 391 (discussing relevance criteria for admission of Rule 404(b) evidence). Therefore, the State's proffer contains circumstantial evidence upon which a rational jury could find beyond a reasonable doubt that Fischer unlawfully appropriated the Cricket rifle with intent to deprive the owner of the property. See TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp.2006). Applying the appropriate abuse of discretion standard, I cannot conclude that the trial court's threshold decision to admit the evidence of the rifle theft was arbitrary or unreasonable, or falls outside the zone of reasonable disagreement. See Montgomery, 810 S.W.2d at 391. Therefore, I would hold the trial court did not err in admitting the evidence.

Moreover, although the majority recognizes that in analyzing harm it is required to consider the error "in the context of the entire record," it expressly declines to do so. The majority's reasoning is that if it were to consider all of the evidence in the record in determining whether the court's alleged error in applying Harrell was harmful, then "we defeat the purpose described in Harrell"—"to prevent the introduction of irrelevant extraneous offense evidence." I disagree with the majority's reasoning on two grounds. First, when the record as a whole establishes that the evidence was relevant, I fail to see how the purpose of Harrell has been thwarted.[3]

---

**3.** I also question the majority's harm analysis in light of Rowell v. State, No. 01–97–01227–CR, 1999 WL 11737, at *2 (Tex.App.-Houston [1st Dist.] Jan. 14, 1999, pet. ref'd) (not designated for publication), in which the court held that erroneous admission of extraneous offense evidence is harmless where trial evidence is later admitted clearly linking the defendant to commission of the extraneous offense.

Second, the logical conclusion of the majority's reasoning is that no error in admitting evidence would ever be harmless because to so hold would always defeat the purpose of the evidentiary rule. This is simply not the law.