

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-07-00170-CR

_____

HARRY EUGENE PETRIE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 14,008

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Harry Eugene Petrie, Defendant below, appeals his conviction by a jury for the aggravated sexual assault of V.J., a child (Section 22.021 of the Texas Penal Code),[1] claiming two points of error: (1) that the trial court erred in allowing a forensic interviewer with a child advocacy group to testify as an outcry witness, maintaining that the child's father was the sole person to qualify to testify in that capacity and (2) that the Defendant received ineffective assistance of counsel at trial. We affirm.

## I.	PROPER OUTCRY WITNESS

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay testimony is generally inadmissible at trial. *See* TEX. R. EVID. 802.

However, the Texas Legislature recognized the difficulty which the prohibition against hearsay testimony presents in some circumstances and, in response, enacted Article 38.072 of the Texas Code of Criminal Procedure.[2] This Article is

> a rule of evidence admissibility, allowing trial courts to admit some hearsay statements in the prosecution of certain offenses against children when those statements are made under the specified conditions. This statute serves the societal interests of promoting the fair prosecution of child abuse cases and of protecting children in court by allowing the admission of their casual "street corner" confidences

---

[1]*See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2008).

[2]*See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon 2005).

2

to an adult as a supplement to (or sometimes even a substitute for) what may be halting, incoherent, or traumatic in-court testimony.

*Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005).

Restrictions to this exception to the hearsay rule exist. Pertinent to this case, it is required that the statements were made (a) by the child against whom the offense was allegedly committed; and (b) to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense.

This kind of statement made by a child victim to an adult is usually called an "outcry statement" and the person to whom the proffered statements are made by the child is commonly called the "outcry witness." *Robinson v. State*, 985 S.W.2d 584, 586 (Tex. Civ. App.—Texarkana 1998, pet. ref'd). The Defendant argues that the father of the child victim (and not Martha Dykes, the child forensic interviewer) was the first person to whom the child made an outcry statement; the Defendant, therefore, contends that the father of the child was the proper outcry witness. Accordingly, Petrie complains that the testimony of the forensic interviewer was inadmissible as hearsay.

A.      Factual Circumstance

V.J., the child victim, is the daughter of Ricky and Joanna, who are divorced. Ricky is the primary custodial parent of the child. Ricky has a live-in girlfriend, Janie, who had three sons prior to having begun residence with Ricky and one son by Ricky after they began to live together. Ricky, Janie, and the four boys reside in one mobile home. V.J. sleeps at her paternal grandparents' home,

3

which is another mobile home only a short walk down a path from Ricky's home; because of the proximity of the two homes, V.J. spends a good portion of her day at Ricky's home. Janie does not work outside the home and is present most of the time.

Janie was aghast when she entered the living room of the home and discovered V.J. (six years old at the time of this incident and eight years old at the time of trial) performing fellatio on Janie's three-year-old son. Janie immediately telephoned Ricky, who was at his parents' home and Ricky and his parents all hurried over to Ricky's house.

Ricky and V.J. discussed "what had taken place and ask(ed) why," a talk which lasted about twenty to twenty-five minutes; during this talk, V.J. confided to Ricky that her maternal grandfather (the Defendant) had taught her to do that, going on to say that the Defendant had spanked her and made her do that to him, that she had not told her father because the Defendant had said that he would kill Ricky if she told, that the incident had occurred in the Defendant's living room, and that the paternal grandmother was in the house when it happened. In addition, he testified that V.J. had said that she had told her mother previously, but that her mother had said to just keep her mouth shut about it. Ricky said that although V.J. said that her grandfather had made her do that more than once, she neither gave any details about any other such incident, how many times he would take his penis from her mouth and reinsert it when these incidents occurred, nor her feelings about the incidents. It was mentioned that Ricky's mother also spoke with the child at that time regarding the incident, but the testimony did not reveal the content of that discussion.

4

The sheriff was immediately called and an appointment was made for V.J. to speak to someone at the Northeast Texas Child Advocacy Center (CAC) within days after V.J.'s revelation of the occurrence of the sexual assault. Dykes, the child forensic interviewer with the CAC, did an extensive interview of over an hour and elicited substantial details from V.J. concerning the conduct between V.J. and the Defendant.

**B**.     **Ruling on Objection to Hearsay**

The Defendant had been given prior notice of the intention of the State to call Dykes to testify as the outcry witness. At a hearing outside the presence of the jury, the Defendant argued that the "first person" to whom V.J. made a statement about the offense was her father, not Dykes. His argument was that since there can only be one outcry witness, Dykes could not testify about information related to her by V.J. During the hearing, both Dykes and Ricky were questioned on voir dire to provide a summary of the substance of their respective conversations with V.J.

After the hearing, the trial court overruled Defendant's objection and allowed Dykes's testimony as the outcry witness.

**C**.     **Standard of Review**

"When reviewing a trial court's ruling on the admission of evidence, an appellate court applies an abuse of discretion standard of review." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *accord Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). "A trial court's determination that an outcry statement is admissible under article 38.072 is

reviewed for an abuse of discretion." *Nino v. State*, 223 S.W.3d 749, 752 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). "'[A] trial court has broad discretion in determining' the proper outcry witness." *Villanueva v. State*, 209 S.W.3d 239, 247 (Tex. App.—Waco 2006, no pet.) (quoting *Garcia*, 792 S.W.2d at 92).

However, although a trial court has broad discretion in determining the person who can be an outcry witness, that discretion is not unfettered. The statute, which prescribes a narrow exception to the hearsay rule, defines the identity of the outcry witness as being the "first person . . . to whom the child made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072. There is no exception to allow the second person to whom the child speaks about such an incident, whether or not that second person can elicit more details than the first.

Plainly, Ricky testified that V.J. had told him "who" did this thing (the Defendant), "where" it occurred (in the living room of the child's paternal grandparent), and "what" occurred (she was forced to perform fellatio). In a journalistic sense, the only remaining question ("when") remained unanswered throughout the trial. Although many more details were elicited through the skilled questioning of the trained interviewer than by the child's father, those details were not related to the "first person" prescribed by the statute to qualify as the outcry witness.

Accordingly, there was error in having permitted the hearsay testimony of Dykes, the forensic interviewer.

6

**D**.      **Harm Analysis**

We do not reverse a ruling based on nonconstitutional error that does not affect "substantial rights." *See* TEX. R. APP. P. 44.2(b).  If, after examining the record as a whole, we determine that any error had slight or no effect on the jury, then we will not overturn the trial court's ruling. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).  An error affects a substantial right when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Russell v. State*, 113 S.W.3d 530, 549 (Tex. App.—Fort Worth 2003, pet. ref'd).  The "presence of overwhelming evidence of guilt plays a determinative role" in this analysis. *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002) (quoting *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)).  If we have "a grave doubt" that the result was free from the substantial influence of the error, then we must reverse. *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002).  The court has explained that "grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id*. at 637–38 (citing *O'Neal v. McAninch*, 513 U.S. 432, 433–36 (1995)).  Thus, "in cases of grave doubt as to harmlessness the petitioner must win." *Burnett*, 88 S.W.3d at 638.

In essence, the fact that Dykes was not the proper outcry witness (whereby she would fall into the category of witnesses permitted to testify under the outcry-witness exception to the hearsay rule), her testimony became inadmissible as hearsay.  Therefore, in this case, we will completely disregard

her entire testimony to determine what other evidence there was to urge the jury to vote for a conviction.

First, we have the testimony of Ricky, V.J.'s father, which is set out above. While his outcry testimony was neither as detailed nor as extensive as that of the forensic interviewer, the basic facts of the assault are set out.

Second, there was the testimony of Shane Jackson, the licensed counselor to whom V.J. was taken for treatment of her psychological condition after the assault was discovered. There was no general hearsay objection to the testimony of this witness, which was admissible. *See* TEX. R. EVID. 803(4). The testimony of Jackson tracked much of that given by the forensic interviewer and provided about as much detail. Consequently, almost the same information contained in the testimony of Dykes, the putative outcry witness, was repeated in Jackson's testimony.

Third, there was the testimony of V.J. herself. Although her testimony was uncertain in many respects and although her testimony contradicted some of the things which Jackson had said (as might be expected with an eight year old on the witness stand), she was definitely clear in her testimony that her grandfather, the Defendant, had compelled her to take his penis into her mouth.

Consequently, even if one totally disregards any testimony given by Dykes, overwhelming evidence of guilt remains.

However, we examine not only the other evidence presented, we also review the entire record of the trial. In doing so, we consider the nature of the evidence supporting the verdict, the character

of the error, and how the erroneously-admitted evidence might have been considered in connection with other evidence in the case. *Motilla*, 78 S.W.3d at 357–58. We take into account the source and the nature of the error, the extent of emphasis placed upon it by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat the same mistake with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); *Fischer v. State*, 235 S.W.3d 470, 475 (Tex. App.—San Antonio 2007, no pet.).

For the most part, the testimony proffered by Dykes was redundant of other testimony, particularly the testimony of Jackson, the child's counselor. The reference made by the State to Dykes's testimony on closing argument was slight.[3] On the other hand, the Defendant's closing argument relied quite a bit on this testimony, pointing out that V.J. began the interview with Dykes by making four separate denials of the Defendant's conduct four times before finally relating that Petrie had compelled her to put his penis in her mouth. It would appear that on closing argument, then, the Defendant used Dykes's testimony more effectively to buttress his case than the State used it to convict him. In short, Dykes's testimony was not so compelling, so unique, or so persuasive that it played a significant role in the trial. The State, which offered it, placed little emphasis on its importance during argument. Accordingly, its influence on the jurors was relatively minimal, given

---

[3]The sole mention by the State of Dykes's testimony was, "You heard her say it to her father, you heard her say it four days later to the CAC interviewer, a forensic interviewer."

9

the weight of the entire case, and it is highly unlikely that the jurors unduly relied upon it in voting for a conviction.

Under this analysis, we entertain no grave doubts that the result at which the jury arrived was free from the substantial influence of the error.

This being the case, we find that the error of allowing Dykes to testify as the outcry witness was harmless. This point of error is rejected.

## II. CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

The Defendant next claims that he was provided ineffective assistance of counsel, thereby depriving him of his constitutional right to the same.

The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a preponderance of the evidence (1) that his counsel's representation fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced the defense. *Id.* at 689; *Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant must prove that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning

10

of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686.

The Defendant cites several examples which took place during trial which, he alleges, when taken in the cumulative, prove that he did not receive effective counsel. These examples are:

> (1)    Some witnesses (Ricky, the forensic interviewer, the licensed professional counselor, and V.J.'s mother) all testified to one degree or another that they believed V.J. to be telling the truth in her allegations against the Defendant but Defendant's counsel made no objection;

> (2)    That when a drawing made by V.J. during her counseling session portrayed the Defendant in jail being deprived of television rights, the right to communicate with anyone, etc., was presented, the only objection lodged by the Defendant's counsel to its introduction was that no proof had been adduced for it to fall within the business records exception when a proper objection would have been to object to its introduction as being unduly prejudicial to the Defendant; and

> (3)    Defendant's counsel either did not object to the testimony of Defendant's wife and daughter that Defendant had been prone to violence toward his wife and his now-deceased son in times past or, when he lodged objections which were sustained, he failed to request that the jury be instructed to disregard that evidence.

Texas appellate courts begin any such analysis by presuming that the appellant's trial counsel performed competently. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We also presume that counsel's decisions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation for the conduct if any can be imagined. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). We will not conclude that

11

the challenged conduct constitutes deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 440. The best kind of record for this kind of review is one produced on a hearing on a motion for new trial or a hearing on an application for writ of habeas corpus. *Smith v. State*, 968 S.W.2d 490, 494 (Tex. App.—Texarkana 1998, no pet.). That strategy was not involved here.

The Defendant has failed to establish that he suffered the ineffective assistance of counsel.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice


Date Submitted:     July 15, 2008
Date Decided:       August 6, 2008

Do Not Publish