

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1613-07

### ROBERT WALKER FISCHER, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, KEASLER, HOLCOMB and COCHRAN, JJ., joined. WOMACK, J., filed a concurring opinion in which MEYERS, J., joined. COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined. PRICE, J., filed a concurring and dissenting opinion.

## O P I N I O N

A jury convicted appellant of murder and sentenced him to 99 years in prison. The court of appeals reversed the conviction because the trial court made a pretrial ruling that it would admit evidence that appellant had access to the murder weapon near the time of the murder. We will reverse.

The evidence in this case shows that on May 26, 2003, the victim was killed in her home by

a single gunshot wound to the back of her head at close range. Just before appellant's trial began, the State proffered evidence that it intended to present during its case-in-chief. The State's proffer essentially was that on June 5, 2003, employees of a Wal-Mart store where appellant worked as an assistant manager discovered that the probable murder weapon (a single shot .22 caliber Cricket rifle manufactured mainly for children) went missing from the Wal-Mart store's inventory some time after May 20th or 21st of 2003, and that appellant was one of as many as sixteen Wal-Mart employees with a key to the secured gun locker where this rifle was kept.[1] Appellant objected to the admission of this evidence because, among other things, the State could not prove to the jury beyond a reasonable doubt that appellant "took" the rifle.[2] The trial court ruled that the State's proffer

---

[1] The murder weapon was not recovered. The State, however, presented extensive ballistic evidence that, with the other evidence as stated above (e.g., appellant's access to the Cricket rifle missing from the Wal-Mart store some time after May 20th or 21st of 2003), supports a finding beyond a reasonable doubt that this rifle was the murder weapon. *See also Fischer v. State*, 235 S.W.3d 470, 474 (Tex.App.–San Antonio 2007) (discussing this evidence) and at 477-78 (Speedlin, J., dissenting) (also discussing this evidence). The ballistic evidence showed that the .22 caliber bullet that killed the victim was fired from a .22 caliber Cricket rifle. *See id*. The ballistic evidence also showed that bullets fired from a .22 caliber Cricket rifle with the serial number next in the series to that of the missing rifle from the Wal-Mart had very nearly the same "rifling characteristics" as the bullet that caused the victim's death. *See id*.

Q. [STATE]: What did you find out about those projectiles?

A. [STATE'S BALLISTICS EXPERT, LOVE]: I was able to–what we found out was, these bullets were fired from a firearm that had the same rifle characteristics identical to [the .22 caliber bullet that caused the victim's death].

Q. And when you say the same rifling characteristics, were those rifling characteristics identical to [the .22 caliber bullet that caused the victim's death]?

A. Yes, very much so, very–very near to it.

[2] Appellant made the following objection:

established that "the extraneous [theft-of-the-rifle] offense [was] admissible beyond a reasonable

doubt."

[THE COURT]: Let me just say this. We're doing this on proffer.

[DEFENSE]: Yes, Your Honor.

[STATE]: Yes, Your Honor.

[THE COURT]: So we're doing this based upon what [the State's] good faith belief of the evidence is. If at some point during this trial it turns out that's not the case, which I'm–I've known [the prosecutor] a long time; I don't believe that will be the case–then you have an appropriate remedy.

* * *

But at this point, I'm going to overrule the motion in limine, and under the 404(b) proffer, I'll admit it on the case in chief, finding that the probative outweighs the prejudicial.

[DEFENSE]: And does the Court also make a determination that the extraneous offense is admissible beyond a reasonable doubt–or that the Court believes that it is beyond a reasonable doubt?

[THE COURT]: At this time I'm going to say that based on the proffer. Now, once again, I've left you your outlet on that, depending on what the testimony reveals.

During its case-in-chief, the State presented evidence to support what it had proffered (i.e.,

that appellant was one of as many as sixteen Wal-Mart employees with a key to the secured gun

locker from which the murder weapon went missing some time after May 20th or 21st of 2003). The

State also presented evidence that the victim's killer took cash and valuables worth thousands of

---

[DEFENSE]: Now, our objection to that evidence coming in is that–it's multiple, Your Honor. Number 1, that it's not relevant. If it is relevant, its probative value is outweighed by its unfair prejudice or confusion of the issues because, Your Honor, number 1, no one puts the rifle in [appellant's] hand. In other words, if we had someone that said, Oh, [appellant] came in and said he stole the rifle from Wal-Mart, or they have him on a videotape that he had taken the rifle, or even a better time line, because we don't know if that rifle went missing after the May 27th of '03, because the audit was not conducted until June 4th. And so not only do we not know that he's the one that took it, but we don't know when it was taken.

dollars from the victim's home. Evidence was also presented from which a rational jury could find that the victim probably knew her killer and let the killer into her home and felt comfortable enough with the killer to be sitting in a chair with her back to the killer playing a video game just before the killer shot her in the back of the head at close range. Evidence was also presented from which a rational jury could find that the killer was familiar with the inside of the victim's home and knew where she kept her valuables.

The State also proved that the victim was appellant's 69-year-old aunt and that appellant was a regular visitor to her home and may have had a motive to kill her. A friend of the victim testified that, in December 2002, the victim was very upset and told her that appellant would "never get another thing from [her] again." This witness also testified that, about three days before the murder, the victim was "very unnerved" and "afraid" and told her that appellant "gives me the creeps." No evidence was presented that any of the other Wal-Mart employees with keys to the gun locker from which the Cricket rifle went missing were related to the victim or had a motive to kill her or knew the lay-out of her home or knew where she kept her valuables or gave her the creeps.

Relying primarily on this Court's decision in *Harrell v. State*,[3] the court of appeals, with one justice dissenting, decided that the trial court's ruling on the State's proffer was error, because the proffered evidence was legally insufficient to support a finding beyond a reasonable doubt that appellant committed the theft-of-the-rifle extraneous offense. *See Fischer*, 235 S.W.3d at 472-75 ("At the time of the proffer, there was legally insufficient evidence that Fischer committed the extraneous offense. Therefore, the trial court could only conclude that a jury could not reasonably

---

[3] 884 S.W.2d 154 (Tex.Cr.App. 1994).

find beyond a reasonable doubt that Fischer committed the extraneous offense.").[4] The court of appeals also decided that this ruling harmed appellant, even though "evidence submitted after the proffer" would have permitted a jury to find beyond a reasonable doubt that appellant committed the theft-of-the-rifle extraneous offense. According to the court of appeals, the trial court's erroneous ruling on the State's proffer harmed appellant, because this ruling resulted in the jury hearing the evidence "linking [appellant] to the Cricket rifle reportedly stolen from Wal-Mart."

> In this case, the difficulty of the harm analysis arises from the admission of additional evidence beyond the proffer during trial. The State urges there is no harm because, even if the proffer was initially deficient, evidence submitted after the proffer, connecting Fischer to the missing rifle, was sufficient to allow the jury to find Fischer committed the theft beyond a reasonable doubt. The additional evidence connected the Cricket rifle to the murder victim, who was Fischer's aunt, and additional testimony described a strained familial relationship between Fischer and the murder victim. Yet, if the court had correctly excluded the evidence described in the proffer, the jury would not have heard any of the evidence linking Fischer to the Cricket rifle reportedly stolen from Wal-Mart. The purpose of the procedure described in *Harrell* is to prevent the introduction of irrelevant extraneous offense evidence. Thus, if we agreed with the State's argument that we may consider unrelated evidence submitted after the proffer to cure the deficiency of the proffer, then we defeat the purpose described in *Harrell*. Because we are bound to follow *Harrell*, we decline to accept the State's argument. Having considered the record as a whole, we conclude that the erroneous admission of the extraneous offense evidence had a substantial and injurious effect or influence on the jury's verdict thereby affecting Fischer's substantial rights.

*See Fischer*, 235 S.W.3d at 475-76.

We exercised our discretionary authority to review the court of appeals' decision. The grounds upon which we granted review are:

1. Did the court of appeals err in holding that the trial court reversibly erred in

---

[4]

*See also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) ("legally sufficient" evidence is evidence that, when viewed in the light most favorable to a guilty verdict, supports a beyond-a-reasonable-doubt finding of guilt on the essential elements of the crime).

admitting extraneous offense evidence because the State's [TEX. R. EVID.] 104(b) proffer was not sufficient to prove beyond a reasonable doubt that the appellant committed the extraneous offense, even though the evidence adduced during the trial was sufficient to prove that the appellant committed the extraneous offense?

2. Did the court of appeals err in applying a no evidence standard of review test in determining the admissibility of evidence in direct contravention of this court's prior holdings?

3. Did the court of appeals err in confining its review of the trial court's decision to admit evidence of an extraneous offense solely to the Rule 104(b) proffer or should the court have considered all of the evidence admitted at trial concerning the extraneous offense?

4. Did the court of appeals err in resurrecting, *sub silentio*, the reasonable alternative hypothesis construct requiring the State to exclude all other possible perpetrators of the extraneous offense other than the appellant in its Rule 104(b) proffer?

5. Must a party's Rule 104(b) proffer seeking admission of [TEX. R. EVID.] 404(b) extraneous offense satisfy the "beyond a reasonable doubt" quantum of proof necessary for a criminal conviction, even when the criminal aspect of the defendant's 404(b) conduct is not relevant to his guilt or innocence in the case being tried?

6. Did the court of appeals apply an improper standard in conducting its harm analysis by ignoring the fact that the jury was given a limiting instruction on the extraneous offense, and also by ignoring the fact that the evidence admitted at trial was sufficient to prove that appellant had committed the extraneous offense beyond a reasonable doubt?

7. Did the court of appeals err in holding the trial court abused its discretion in admitting evidence of other crimes pursuant to Rule 404(b) when the evidence in question was actually admissible as same transaction contextual evidence?

We begin our discussion by noting that the State's pretrial proffer of evidence was insufficient for a jury to find beyond a reasonable doubt (or by any other standard of proof) that appellant committed the theft-of-the-rifle extraneous offense as the penal code would define that offense. *See Fischer*, 235 S.W.3d at 473; *see generally* TEX. PEN. CODE, § 31.03.[5] Nevertheless,

---

5

It would be very difficult to uphold a finding under any standard of proof that appellant

the evidence that the State presented at trial beyond the proffer is sufficient to support a finding beyond a reasonable doubt that appellant committed this offense. It would be very difficult to conclude otherwise in this particular case, because the State necessarily proved beyond a reasonable doubt that appellant was the one who stole the rifle from the Wal-Mart when it also proved beyond a reasonable doubt that appellant used this weapon to murder the victim. *See Fischer*, 235 S.W.3d at 475 (noting that the State claimed at oral argument that the evidence of the theft of the Cricket rifle was "mutually interconnected" with the murder charge).[6]

In *Harrell*, this Court held that "in deciding whether to admit extraneous offense evidence in the guilt/innocence phase of trial, the trial court must, under rule 104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *See Harrell*, 884 S.W.2d at 160.[7] The portion of the holding in *Harrell* as to the timing of when the trial court must make this determination, however, is inconsistent with the "subject to" language of rule 104(b), which provides:

---

committed the theft-of-the-rifle extraneous offense based only on evidence that he was one of as many as sixteen Wal-Mart employees with a key to the gun locker from which the rifle went missing.

[6] And, we agree with the State that "everyone apparently agrees that the State proved beyond a reasonable doubt that the appellant committed the extraneous bad act." *See also Fischer*, 235 S.W.3d at 474-76 (trial court's ruling admitting the evidence was erroneous "[b]ased on the proffer" and "the difficulty of the harm analysis arises from the admission of additional evidence beyond the proffer during trial"). Appellant does not claim otherwise in his brief. He claims that the court of appeals was restricted "to reviewing the sufficiency of the oral proffer that the State made in support of the admission of the extraneous offense in this case."

[7] The State claims that it was not required to prove that appellant committed the theft-of-the-rifle extraneous offense, because appellant's mere access to the Cricket rifle was logically relevant. We find it unnecessary to address this claim.

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.[8]

It is also contrary to prior case law deciding that rule 104(b) allows admission of evidence subject to "connecting up" its relevancy later in the trial. *See Fuller v. State*, 829 S.W.2d 191, 197 (Tex.Cr.App. 1992) (Benavides, J., joined by McCormick, P.J., and Campbell, and White, JJ.) (evidence should not be excluded under rule 104(b) "merely because its relevance may depend upon the production of additional evidence at a later point in the trial") and at 198 ("a trial judge cannot err in most cases by overruling a relevancy objection so long as the challenged evidence might be 'connected up' before the end of trial") and at 211 (Miller, J., concurring, joined by Maloney, J.) (rule 104(b) allows admission of evidence "subject to" proving up relevancy later in the trial).[9]

We, therefore, do not believe that *Harrell* should be read to require a decision in cases like this that a reviewing court is limited to the initial proffer in determining whether rule 404(b) evidence of "other crimes, wrongs, or acts" was properly admitted. This Court's decision in *Harrell*

---

[8]

The State's theory at trial apparently was that the relevancy of the evidence of appellant's access to the missing rifle from Wal-Mart was conditioned upon the introduction of evidence that would permit a jury to find beyond a reasonable doubt that appellant stole this rifle.

[9]

We note that *Fuller* presented the opposite situation to that presented here. In *Fuller*, the trial court's initial ruling overruling the defendant's relevancy objection to the admission of evidence of the Aryan Brotherhood's violent beliefs and activities "only became challengeable" when the State could not prove that the defendant was a member of this organization by the close of the case. *See Fuller*, 829 S.W.2d at 196-99. A plurality of this Court decided that the defendant forfeited his complaint about the admission into evidence of the Aryan Brotherhood's activities, because he did not later reurge his objection or move to strike this evidence when it became clear that the State could not prove that he was a member of the Aryan Brotherhood. *See id*. This Court in *Fuller* noted that this "rule may seem harsh to some, but it is a fundamental feature of our adjudicatory system." *See id*.

was meant only to clarify the standard that a trial court applies in admitting this evidence. *See Harrell*, 884 S.W.2d at 155 (discretionary review granted "to determine, for purposes of admissibility, the standard of proof applicable to the State in proving the defendant committed an extraneous offense") and at 161 (Clinton, J., concurring in the result) (same). *Harrell* did not decide that a trial court's ruling on an initial proffer is dispositive of the admissibility issue regardless of what evidence is presented afterwards during the trial. Such a holding would be inconsistent with prior case law and would render the "subject to" language in rule 104(b) meaningless.

The court of appeals decided in this case that the "purpose of the procedure described in *Harrell* is to prevent the introduction of irrelevant extraneous offense evidence" and that it would defeat this purpose to "consider unrelated evidence submitted after the proffer to cure the deficiency of the proffer." *See Fischer*, 235 S.W.3d at 476; *but cf. Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex.Cr.App. 2005) (if extraneous-offense evidence is improperly admitted during State's case-in-chief, this error may be cured by defendant's subsequent testimony which opens the door to this extraneous-offense evidence in rebuttal). But, the "purpose of the procedure described in *Harrell*" was to clarify that a trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense.[10] That purpose was achieved in this case with the introduction of evidence that permitted the jury to find beyond a reasonable doubt that appellant committed the theft-of-the-rifle extraneous offense. We do not

---

[10] *See Harrell*, 881 S.W.2d at 160 and at 161 (Clinton, J., concurring in the result) (standard of admissibility of rule 404(b) evidence of "other crimes, wrongs, or acts" is proof beyond a reasonable doubt requiring trial court to "determine, as a predicate to admissibility of such evidence in the first place, whether a rational jury *could* conclude, to a level of confidence beyond a reasonable doubt, that the accused committed the extraneous misconduct") (emphasis in original).

believe that it is legally significant that the State's pretrial proffer did not satisfy this burden so long as the evidence presented by the end of trial did. *See Fuller*, 829 S.W.2d at 198 ("a trial judge cannot err in most cases by overruling a relevancy objection so long as the challenged evidence might be 'connected up' before the end of trial").[11]

The judgment of the court of appeals is reversed, and the case is remanded there to address appellant's other points of error.[12]

Hervey, J.

Delivered: October 29, 2008
Publish

---

[11] We do not agree with appellant that this rule necessarily permits "the State to introduce all the evidence it would like as a threshold matter, and then, at the close of the State's case, instruct the jury not to consider any evidence that the State failed to 'connect up.'"

[12] Our opinion in this case disposes of the claims presented in grounds one and three of the State's petition for discretionary review. Based on our disposition of these grounds, we find it unnecessary to address grounds two, four, five, six, and seven.