Robert Walker FISCHER, Appellant

v.

The STATE of Texas.

No. PD–1613–07.

Court of Criminal Appeals of Texas.

Oct. 29, 2008.

Franklyn Mickelsen, Dallas, for Appellant.

Scott Roberts, Assistant Criminal District Attorney, San Antonio, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., JOHNSON, KEASLER, HOLCOMB and COCHRAN, JJ., joined.

A jury convicted appellant of murder and sentenced him to 99 years in prison. The court of appeals reversed the conviction because the trial court made a pretrial ruling that it would admit evidence that appellant had access to the murder weapon near the time of the murder. We will reverse.

The evidence in this case shows that on May 26, 2003, the victim was killed in her home by a single gunshot wound to the back of her head at close range. Just before appellant's trial began, the State proffered evidence that it intended to present during its case-in-chief. The State's proffer essentially was that on June 5, 2003, employees of a Wal–Mart store where appellant worked as an assistant manager discovered that the probable murder weapon (a single shot .22 caliber Cricket rifle manufactured mainly for children) went missing from the Wal–Mart store's inventory some time after May 20th or 21st of 2003, and that appellant was one of as many as sixteen Wal–Mart employees with a key to the secured gun locker where this rifle was kept.[1] Appellant objected to the admission of this evidence because, among other things, the State could not prove to the jury beyond a reasonable doubt that appellant "took" the rifle.[2] The

---

1. The murder weapon was not recovered. The State, however, presented extensive ballistic evidence that, with the other evidence as stated above (e.g., appellant's access to the Cricket rifle missing from the Wal–Mart store some time after May 20th or 21st of 2003), supports a finding beyond a reasonable doubt that this rifle was the murder weapon. *See also Fischer v. State*, 235 S.W.3d 470, 474 (Tex.App.-San Antonio 2007) (discussing this evidence) and at 477–78 (Speedlin, J., dissenting) (also discussing this evidence). The ballistic evidence showed that the .22 caliber bullet that killed the victim was fired from a .22 caliber Cricket rifle. *See id.* The ballistic evidence also showed that bullets fired from a .22 caliber Cricket rifle with the serial number next in the series to that of the missing rifle from the Wal–Mart had very nearly the same "rifling characteristics" as the bullet that caused the victim's death. *See id.*

Q. [STATE]: What did you find out about those projectiles?
A. [STATE'S BALLISTICS EXPERT, LOVE]: I was able to—what we found out

was, these bullets were fired from a firearm that had the same rifle characteristics identical to [the .22 caliber bullet that caused the victim's death].
Q. And when you say the same rifling characteristics, were those rifling characteristics identical to [the .22 caliber bullet that caused the victim's death]?
A. Yes, very much so, very—very near to it.

2. Appellant made the following objection:

[DEFENSE]: Now, our objection to that evidence coming in is that—it's multiple, Your Honor. Number 1, that it's not relevant. If it is relevant, its probative value is outweighed by its unfair prejudice or confusion of the issues because, Your Honor, number 1, no one puts the rifle in [appellant's] hand. In other words, if we had someone that said, Oh, [appellant] came in and said he stole the rifle from Wal–Mart, or they have him on a videotape that he had taken the rifle, or even a better time line,

trial court ruled that the State's proffer established that "the extraneous [theft-of-the-rifle] offense [was] admissible beyond a reasonable doubt."

[THE COURT]: Let me just say this. We're doing this on proffer.

[DEFENSE]: Yes, Your Honor.

[STATE]: Yes, Your Honor.

[THE COURT]: So we're doing this based upon what [the State's] good faith belief of the evidence is. If at some point during this trial it turns out that's not the case, which I'm—I've known [the prosecutor] a long time; I don't believe that will be the case—then you have an appropriate remedy.

\* \* \*

But at this point, I'm going to overrule the motion in limine, and under the 404(b) proffer, I'll admit it on the case in chief, finding that the probative outweighs the prejudicial.

[DEFENSE]: And does the Court also make a determination that the extraneous offense is admissible beyond a reasonable doubt—or that the Court believes that it is beyond a reasonable doubt?

[THE COURT]: At this time I'm going to say that based on the proffer. Now, once again, I've left you your outlet on that, depending on what the testimony reveals.

During its case-in-chief, the State presented evidence to support what it had proffered (i.e., that appellant was one of as many as sixteen Wal–Mart employees with a key to the secured gun locker from which the murder weapon went missing some time after May 20th or 21st of 2003).

The State also presented evidence that the victim's killer took cash and valuables worth thousands of dollars from the victim's home. Evidence was also presented from which a rational jury could find that the victim probably knew her killer and let the killer into her home and felt comfortable enough with the killer to be sitting in a chair with her back to the killer playing a video game just before the killer shot her in the back of the head at close range. Evidence was also presented from which a rational jury could find that the killer was familiar with the inside of the victim's home and knew where she kept her valuables.

The State also proved that the victim was appellant's 69–year–old aunt and that appellant was a regular visitor to her home and may have had a motive to kill her. A friend of the victim testified that, in December 2002, the victim was very upset and told her that appellant would "never get another thing from [her] again." This witness also testified that, about three days before the murder, the victim was "very unnerved" and "afraid" and told her that appellant "gives me the creeps." No evidence was presented that any of the other Wal–Mart employees with keys to the gun locker from which the Cricket rifle went missing were related to the victim or had a motive to kill her or knew the layout of her home or knew where she kept her valuables or gave her the creeps.

Relying primarily on this Court's decision in *Harrell v. State*,[3] the court of appeals, with one justice dissenting, decided that the trial court's ruling on the State's proffer was error, because the proffered evidence was legally insufficient to support

because we don't know if that rifle went missing after the May 27th of '03, because the audit was not conducted until June 4th. And so not only do we not know that he's

the one that took it, but we don't know when it was taken.

**3.** 884 S.W.2d 154 (Tex.Cr.App.1994).

a finding beyond a reasonable doubt that appellant committed the theft-of-the-rifle extraneous offense. *See Fischer*, 235 S.W.3d at 472–75 ("At the time of the proffer, there was legally insufficient evidence that Fischer committed the extraneous offense. Therefore, the trial court could only conclude that a jury could not reasonably find beyond a reasonable doubt that Fischer committed the extraneous offense.").[4] The court of appeals also decided that this ruling harmed appellant, even though "evidence submitted after the proffer" would have permitted a jury to find beyond a reasonable doubt that appellant committed the theft-of-the-rifle extraneous offense. According to the court of appeals, the trial court's erroneous ruling on the State's proffer harmed appellant, because this ruling resulted in the jury hearing the evidence "linking [appellant] to the Cricket rifle reportedly stolen from Wal–Mart."

> In this case, the difficulty of the harm analysis arises from the admission of additional evidence beyond the proffer during trial. The State urges there is no harm because, even if the proffer was initially deficient, evidence submitted after the proffer, connecting Fischer to the missing rifle, was sufficient to allow the jury to find Fischer committed the theft beyond a reasonable doubt. The additional evidence connected the Cricket rifle to the murder victim, who was Fischer's aunt, and additional testimony described a strained familial relationship between Fischer and the murder victim. Yet, if the court had correctly excluded the evidence described in the proffer, the jury would not have heard any of the evidence linking Fischer to the Cricket rifle reportedly stolen from Wal–Mart. The purpose of the procedure described

in *Harrell* is to prevent the introduction of irrelevant extraneous offense evidence. Thus, if we agreed with the State's argument that we may consider unrelated evidence submitted after the proffer to cure the deficiency of the proffer, then we defeat the purpose described in *Harrell*. Because we are bound to follow *Harrell*, we decline to accept the State's argument. Having considered the record as a whole, we conclude that the erroneous admission of the extraneous offense evidence had a substantial and injurious effect or influence on the jury's verdict thereby affecting Fischer's substantial rights.

*See Fischer*, 235 S.W.3d at 475–76.

We exercised our discretionary authority to review the court of appeals' decision. The grounds upon which we granted review are:

1. Did the court of appeals err in holding that the trial court reversibly erred in admitting extraneous offense evidence because the State's [TEX.R. EVID.] 104(b) proffer was not sufficient to prove beyond a reasonable doubt that the appellant committed the extraneous offense, even though the evidence adduced during the trial was sufficient to prove that the appellant committed the extraneous offense?

2. Did the court of appeals err in applying a no evidence standard of review test in determining the admissibility of evidence in direct contravention of this court's prior holdings?

3. Did the court of appeals err in confining its review of the trial court's decision to admit evidence of an extraneous offense solely to the Rule 104(b) proffer

---

4. *See also Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("legally sufficient" evidence is evidence that, when viewed in the light most favorable to a guilty verdict, supports a beyond-a-reasonable-doubt finding of guilt on the essential elements of the crime).

or should the court have considered all of the evidence admitted at trial concerning the extraneous offense?

4. Did the court of appeals err in resurrecting, *sub silentio*, the reasonable alternative hypothesis construct requiring the State to exclude all other possible perpetrators of the extraneous offense other than the appellant in its Rule 104(b) proffer?

5. Must a party's Rule 104(b) proffer seeking admission of [TEX.R. EVID.] 404(b) extraneous offense satisfy the "beyond a reasonable doubt" quantum of proof necessary for a criminal conviction, even when the criminal aspect of the defendant's 404(b) conduct is not relevant to his guilt or innocence in the case being tried?

6. Did the court of appeals apply an improper standard in conducting its harm analysis by ignoring the fact that the jury was given a limiting instruction on the extraneous offense, and also by ignoring the fact that the evidence admitted at trial was sufficient to prove that appellant had committed the extraneous offense beyond a reasonable doubt?

7. Did the court of appeals err in holding the trial court abused its discretion in admitting evidence of other crimes pursuant to Rule 404(b) when the evidence in question was actually admissible as same transaction contextual evidence?

We begin our discussion by noting that the State's pretrial proffer of evidence was insufficient for a jury to find beyond a reasonable doubt (or by any other standard of proof) that appellant committed the theft-of-the-rifle extraneous offense as the penal code would define that offense. *See Fischer*, 235 S.W.3d at 473; *see generally* TEX. PEN.CODE, § 31.03.[5] Nevertheless, the evidence that the State presented at trial beyond the proffer is sufficient to support a finding beyond a reasonable doubt that appellant committed this offense. It would be very difficult to conclude otherwise in this particular case, because the State necessarily proved beyond a reasonable doubt that appellant was the one who stole the rifle from the Wal–Mart when it also proved beyond a reasonable doubt that appellant used this weapon to murder the victim. *See Fischer*, 235 S.W.3d at 475 (noting that the State claimed at oral argument that the evidence of the theft of the Cricket rifle was "mutually interconnected" with the murder charge).[6]

In *Harrell*, this Court held that "in deciding whether to admit extraneous offense evidence in the guilt/innocence phase of trial, the trial court must, under rule 104(b), make an initial determination at the proffer of the evidence, that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense." *See Harrell*, 884

---

**5.** It would be very difficult to uphold a finding under any standard of proof that appellant committed the theft-of-the-rifle extraneous offense based only on evidence that he was one of as many as sixteen Wal–Mart employees with a key to the gun locker from which the rifle went missing.

**6.** And, we agree with the State that "everyone apparently agrees that the State proved beyond a reasonable doubt that the appellant committed the extraneous bad act." *See also*

*Fischer*, 235 S.W.3d at 474–76 (trial court's ruling admitting the evidence was erroneous "[b]ased on the proffer" and "the difficulty of the harm analysis arises from the admission of additional evidence beyond the proffer during trial"). Appellant does not claim otherwise in his brief. He claims that the court of appeals was restricted "to reviewing the sufficiency of the oral proffer that the State made in support of the admission of the extraneous offense in this case."

S.W.2d at 160.[7] The portion of the holding in *Harrell* as to the timing of when the trial court must make this determination, however, is inconsistent with the "subject to" language of rule 104(b), which provides:

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.[8]

It is also contrary to prior case law deciding that rule 104(b) allows admission of evidence subject to "connecting up" its relevancy later in the trial. *See Fuller v. State,* 829 S.W.2d 191, 197 (Tex.Cr.App. 1992) (Benavides, J., joined by McCormick, P.J., and Campbell, and White, JJ.) (evidence should not be excluded under rule 104(b) "merely because its relevance may depend upon the production of additional evidence at a later point in the trial") and at 198 ("a trial judge cannot err in most cases by overruling a relevancy objection so long as the challenged evidence might be 'connected up' before the end of trial") and at 211 (Miller, J., concurring, joined by Maloney, J.) (rule 104(b) allows admission of evidence "subject to" proving up relevancy later in the trial).[9]

We, therefore, do not believe that *Harrell* should be read to require a decision in cases like this that a reviewing court is limited to the initial proffer in determining whether rule 404(b) evidence of "other crimes, wrongs, or acts" was properly admitted. This Court's decision in *Harrell* was meant only to clarify the standard that a trial court applies in admitting this evidence. *See Harrell,* 884 S.W.2d at 155 (discretionary review granted "to determine, for purposes of admissibility, the standard of proof applicable to the State in proving the defendant committed an extraneous offense") and at 161 (Clinton, J., concurring in the result) (same). *Harrell* did not decide that a trial court's ruling on an initial proffer is dispositive of the admissibility issue regardless of what evidence is presented afterwards during the trial. Such a holding would be inconsistent with prior case law and would render the "subject to" language in rule 104(b) meaningless.

The court of appeals decided in this case that the "purpose of the procedure described in *Harrell* is to prevent the introduction of irrelevant extraneous offense evidence" and that it would defeat this purpose to "consider unrelated evidence

---

7. The State claims that it was not required to prove that appellant committed the theft-of-the-rifle extraneous offense, because appellant's mere access to the Cricket rifle was logically relevant. We find it unnecessary to address this claim.

8. The State's theory at trial apparently was that the relevancy of the evidence of appellant's access to the missing rifle from Wal-Mart was conditioned upon the introduction of evidence that would permit a jury to find beyond a reasonable doubt that appellant stole this rifle.

9. We note that *Fuller* presented the opposite situation to that presented here. In *Fuller,* the trial court's initial ruling overruling the defendant's relevancy objection to the admis-

sion of evidence of the Aryan Brotherhood's violent beliefs and activities "only became challengeable" when the State could not prove that the defendant was a member of this organization by the close of the case. *See Fuller,* 829 S.W.2d at 196–99. A plurality of this Court decided that the defendant forfeited his complaint about the admission into evidence of the Aryan Brotherhood's activities, because he did not later reurge his objection or move to strike this evidence when it became clear that the State could not prove that he was a member of the Aryan Brotherhood. *See id.* This Court in *Fuller* noted that this "rule may seem harsh to some, but it is a fundamental feature of our adjudicatory system." *See id.*

submitted after the proffer to cure the deficiency of the proffer." *See Fischer,* 235 S.W.3d at 476; *but cf. Daggett v. State,* 187 S.W.3d 444, 453–54 (Tex.Cr.App. 2005) (if extraneous-offense evidence is improperly admitted during State's case-in-chief, this error may be cured by defendant's subsequent testimony which opens the door to this extraneous-offense evidence in rebuttal). But, the "purpose of the procedure described in *Harrell*" was to clarify that a trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense.[10] That purpose was achieved in this case with the introduction of evidence that permitted the jury to find beyond a reasonable doubt that appellant committed the theft-of-the-rifle extraneous offense. We do not believe that it is legally significant that the State's pretrial proffer did not satisfy this burden so long as the evidence presented by the end of trial did. *See Fuller,* 829 S.W.2d at 198 ("a trial judge cannot err in most cases by overruling a relevancy objection so long as the challenged evidence might be 'connected up' before the end of trial").[11]

The judgment of the court of appeals is reversed, and the case is remanded there to address appellant's other points of error.[12]

WOMACK, J., filed a concurring opinion in which MEYERS, J., joined.

COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

PRICE, J., filed a concurring and dissenting opinion.

WOMACK, J., filed a concurring opinion, in which MEYERS, J., joined.

It seems to me that evidence of the appellant's access to the murder weapon was a relevant fact of this offense, and that analyzing it as evidence of an "extraneous offense" is unnecessary. The Court disagrees; see *ante* at 557 n. 7. Therefore I concur only in its judgment.

COCHRAN, J., filed a concurring opinion in which JOHNSON, J., joined.

I join the majority opinion. I write separately only to suggest that the disagreement between the majority and the concurring and dissenting opinion exemplifies why *Harrell v. State*[1] was wrongly decided in 1994 and why it should be overruled today. As the concurring and dissenting opinion notes, we generally follow the United States Supreme Court on matters dealing with the Texas and Federal Rules of Evidence when those rules read the same.[2] The United States Supreme

---

**10.** *See Harrell,* 884 S.W.2d at 160 and at 161 (Clinton, J., concurring in the result) (standard of admissibility of rule 404(b) evidence of "other crimes, wrongs, or acts" is proof beyond a reasonable doubt requiring trial court to "determine, as a predicate to admissibility of such evidence in the first place, whether a rational jury *could* conclude, to a level of confidence beyond a reasonable doubt, that the accused committed the extraneous misconduct") (emphasis in original).

**11.** We do not agree with appellant that this rule necessarily permits "the State to introduce all the evidence it would like as a threshold matter, and then, at the close of the

State's case, instruct the jury not to consider any evidence that the State failed to 'connect up.'"

**12.** Our opinion in this case disposes of the claims presented in grounds one and three of the State's petition for discretionary review. Based on our disposition of these grounds, we find it unnecessary to address grounds two, four, five, six, and seven.

**1.** 884 S.W.2d 154 (Tex.Crim.App.1994).

**2.** Concurring and Dissenting Op. at 561 n. 3 ("Although *Huddleston* construes the Federal Rules of Evidence, our Rule 104(a) and (b)

Court has stated that Rule 104(b) requires the admission of conditionally relevant evidence once the proponent of the evidence (here the State) has produced sufficient admissible evidence to "support a finding" of the fulfillment of the condition.[3]

Under both Federal and Texas Rule 104(b), the threshold burden of relevancy is very low: "The preliminary fact can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist."[4] Unlike determinations made under Rule 104(a), a rule that employs a "preponderance of the evidence" standard, the proponent need produce only "some evidence", or a "prima facie" showing, before the trial judge is required to admit the conditionally relevant evidence under Rule 104(b).[5]

However, in *Harrell v. State*,[6] this Court declined to follow federal precedent and both federal and Texas commentators. It

held that Texas Rule 104(b) requires the trial judge to determine that there is sufficient evidence to support a jury finding that the defendant committed the act beyond a reasonable doubt before the court may admit evidence of an extraneous offense.[7]

The rationale that we expressed for this unusual interpretation of Rule 104(b) in *Harrell* was that Texas law has long required judges to instruct jurors not to consider evidence of an extraneous offense unless the jurors believe, beyond a reasonable doubt, that the defendant committed that offense.[8] But, as Judge Clinton noted in his concurrence in *Harrell*, it was far from evident that jurors had historically been instructed not to consider extraneous offense evidence unless the jury believed "beyond a reasonable doubt" that the defendant committed that act.[9] Also, even if

---

are in all material respects identical to Federal Rules of Evidence 104(a) and (b). 'Cases and commentaries interpreting the Federal Rules of Evidence are instructive in our consideration of similarly worded provisions in our own rules.' *Coffin v. State*, 885 S.W.2d 140, 147 n. 4 (Tex.Crim.App.1994).'").

3. *See Huddleston v. United States*, 485 U.S. 681, 688–91, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (if there is some evidence, such that a jury could reasonably conclude that the defendant committed an extraneous offense, evidence of that offense is conditionally relevant, and, if otherwise admissible, trial judge may not exclude it); *see generally*, 21 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE (1977).

4. CHARLES A. WRIGHT & KENNETH W. GRAHAM, *supra* § 5054, at 269.

5. *See* Olin G. Wellborn III, *Article I of the Texas Rules of Evidence and Articles I and XI of the Texas Rules of Criminal Evidence: Applicability of the Rules, Procedural Matters, and Preserving Error*, 18 ST. MARY'S L.J. 1165, 1189 (1987) (Criminal Rule 104(b) requires only a "prima facie" showing of the preliminary fact).

6. 884 S.W.2d at 159–60.

7. *Id.* at 160 (recognizing but rejecting standard of proof set out in *Huddleston* for conditionally relevant evidence under Criminal Rule 104(b)).

8. *Id.* at 158–60.

9. *Id.* at 162–63 (Clinton, J., concurring). Judge Clinton stated, *inter alia*, the majority simply concludes, relying on long-time precedent, all of which pre-dates the Rules of Criminal Evidence, that jurors still must be instructed to find an accused perpetrated extraneous misconduct beyond a reasonable doubt before they can consider them in their deliberations. From this uncritically accepted premise the majority reasons that it necessarily follows that the standard for admissibility of such evidence is also proof beyond a reasonable doubt, and that the trial court therefore should determine, as a predicate to admissibility of such evidence in the first place, whether a rational jury *could* conclude, to a level of confidence beyond a reasonable doubt, that the accused committed the extraneous misconduct. Along the way the majority hypothecates that whenever this Court has

jurors had been so instructed in pre-Rules cases, there is nothing in either the rules or logic that requires a "mirror" connection between the standard of proof for the admissibility of evidence and the standard by which jurors should evaluate that evidence. It is one thing to say that the State must prove the defendant's guilt beyond a reasonable doubt and an entirely different thing to say that the State must establish the relevancy of its evidence beyond a reasonable doubt before the trial judge may admit that evidence for the jury's consideration. Surely one would not think that the State must prove, beyond a reasonable doubt, the accuracy of an eyewitness's identification before the eyewitness can testify that she saw the defendant shoot the victim.

As noted by Professors Mueller and Kirkpatrick, jurors are best suited for deciding whether the individual pieces of evidence, when viewed as a whole, actually support guilt or innocence.[10] The judge is just a minimal gatekeeper when it comes to conditionally relevant evidence because juries, not judges, decide the importance or probative value of all evidence:

> FRE 104(b) says that the jury decides whether a condition of fact has been fulfilled if the relevancy of evidence depends on it. Juries do the work of sorting out various pieces of fragmented evidence and deciding whether the resulting picture supports conviction or acquittal or recovery or rejection of claims. FRE 104(b) is useful in codifying the point that separate items of evidence may be interdependent, so accepting or rejecting one item can make others rise in importance or fall away altogether. And FRE 104(b) confirms that juries play a vital role in assessing such matters.[11]

It is especially ironic that here in Texas, the most jury-happy state in the United States, this Court has implied that we trust juries so very little that a trial judge may not admit evidence of an extraneous act (or any other type of conditionally relevant evidence) [12] unless the judge first decides that a jury could find that the defendant committed that act beyond a reasonable doubt. Such a holding is wildly distrustful of the legitimate fact-finding role of jurors and illogically conflates the standard of proof of guilt with the very low threshold for admission of conditionally relevant evidence.

If *Harrell* were consigned to the dustbin, and we followed *Huddleston* and other federal precedent on Rule 104(b) as the concurring and dissenting opinion suggests

---

said in the past that it must be "shown" that the accused committed the extraneous misconduct, and that the proof must be "clear" to be admissible, what we meant all along was that the trial court must be able to say that a rational jury could find beyond a reasonable doubt that the accused was the perpetrator. This whole process of reasoning seems to me to be result-oriented, and not a little disingenuous. *Id.*

**10.** 1 CHRISTOPHER B. MUELLER AND LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 34, at 184–85 (2d ed.1994).

**11.** *Id.*

**12.** I agree with Judge Womack in his concurring opinion that the relevancy of the evidence concerning the missing Cricket rifle depends upon appellant's access to that rifle, not the commission of a theft or any other act of misconduct. But that access evidence is only conditionally relevant and depends upon the offer of "some" evidence that the Cricket rifle was likely used to murder appellant's aunt. Once "some" evidence—evidence sufficient to support a finding—of both appellant's "access" and "murder weapon" has been offered, the jury is then capable of deciding (1) whether to make a connection between the two evidentiary items; and (2) the probative force of that evidence.

that we should, we would not be engaged in semantical strife. The plain words of the Texas rule should be followed: If the relevancy of any evidence (such as appellant's access to the Cricket Rifle) depends upon the fulfillment of a condition of fact (such as the likely use of that rifle as the murder weapon) the trial court shall (and must) admit it upon, or subject to, the introduction of evidence "sufficient to support a finding of the fulfillment of the condition." This Court, in *Harrell*, ignored both the plain language of the rule and its purpose.

PRICE, J., filed a concurring and dissenting opinion.

I agree with the Court that, in deciding whether the trial court correctly determined that the State had produced evidence sufficient to support a jury finding that the appellant committed the extraneous offense of the theft of the rifle, the court of appeals erred to consider only the State's oral proffer of evidence at the beginning of the trial. I disagree, however, that, when taking all of the State's evidence into consideration, the trial court could have found sufficient evidence to support a jury finding that the appellant committed the theft to a level of confidence beyond a reasonable doubt. Moreover, we should not be addressing that question for the first time in a petition for discretionary review. However, because the appellant failed to renew his objection to the admission of the extraneous offense evidence on the grounds that the State ultimately failed to "connect it up," it is unlikely that he has preserved that error for appeal in any event. In my remand order to the court of appeals, I would direct it to address these questions, if necessary, along with the appellant's remaining points of error. Because the Court does not, I cannot join its opinion.

**I.**

In *Harrell v. State*,[1] we held that, before admitting evidence of an extraneous offense, the trial court must make an "initial determination" that there is evidence sufficient to support a jury determination that the defendant committed that offense to a level of confidence beyond a reasonable doubt.[2] This does not constitute a "preliminary question" in contemplation of Rule 104(a) of the Texas Rules of Evidence; rather, the "initial determination" that *Harrell* contemplated was one of the fulfillment of a "conditional fact" under Rule 104(b).[3] Under this provision, the State, as proponent of the extraneous offense evidence, would have a burden to convince the trial court that it would be able to prove up the conditional fact making the evidence relevant, and therefore admissible—namely, that there is sufficient evidence to justify a finding beyond a reasonable doubt that the appellant committed the extraneous offense. As the United States Supreme Court has recognized, "in assessing the sufficiency of the evidence under Rule 104(b), the trial court must consider all evidence presented to the jury."[4]

---

1. 884 S.W.2d 154 (Tex.Crim.App.1994).

2. *Id.* at 159–160.

3. *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Although *Huddleston* construes the Federal Rules of Evidence, our Rule 104(a) and (b) are in all material respects identical to Federal Rules of Evidence 104(a) and (b). "Cases and commentaries interpreting the Federal Rules of Evidence are instructive in our consideration of similarly worded provisions in our own rules." *Coffin v. State*, 885 S.W.2d 140, 147 n. 4 (Tex.Crim.App.1994).

4. *Huddleston, supra*, at 690–91, 108 S.Ct. 1496.

The trial court has traditionally exercised the broadest sort of discretion in controlling the order of proof at trial, and we see nothing in the Rules of Evidence that would change this practice. Often the trial court may decide to allow the proponent to introduce evidence concerning a similar act [of misconduct], and at a later point in the trial assess whether sufficient evidence has been offered to permit the jury to make the requisite finding. If the proponent has failed to meet this minimal standard of proof, the trial court must instruct the jury to disregard the evidence.[5]

This is precisely the approach the trial court took in this case. I therefore agree with the Court that the court of appeals should have considered all of the evidence adduced at trial in deciding whether the trial court abused its discretion to admit the extraneous offense evidence. In limiting its consideration to the evidence that was orally proffered by the State prior to the inception of testimony in the case, the court of appeals essentially treated the admissibility of the extraneous offense as a "preliminary question" under Rule 104(a), rather than as an issue of whether the proponent had met its burden to show the fulfillment of a conditional fact, under Rule 104(b). I concur in the Court's judgment that that was error.

## II.

The Court also concludes that, when considering *all* of the evidence adduced in the course of the trial, there was in fact sufficient evidence to justify a jury finding, beyond a reasonable doubt, that the appellant stole the rifle.[6] I cannot agree. The Court suggests that the evidence is sufficient to prove the theft of the rifle considering that:

- ballistically, the rifle was shown almost certainly to be the murder weapon;

---

**5.** *Id.* at 690, 108 S.Ct. 1496.

**6.** Neither our Rule 104(b), nor Federal Rule 104(b), speaks to the level of confidence by which a trial court must determine that a jury could find "the fulfillment of the condition" that makes conditional-fact evidence admissible. *Harrell, supra,* at 160. In the context of extraneous offense evidence, the United States Supreme Court has held that the trial court must be able to say that a jury could find the conditional fact by a preponderance of the evidence. *See Huddleston, supra,* at 690, 108 S.Ct. 1496 ("In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence."). This Court, however, was not bound to follow the lead of the Supreme Court in this regard, and did not. Instead, for better or for worse, we have honored long-standing state law precedent pre-dating Rule 104(b), and adopted a beyond-a-reasonable-doubt standard for threshold admissibility. *Harrell, supra,* at 161.

Contrary to the suggestion of Judge Cochran in her concurring opinion, I take no position on the advisability of overruling *Harrell*. The question of whether *Harrell* was rightly decided has not been made an issue by the parties in this cause, and I therefore presume we must follow it in deference to *stare decisis.* Moreover, so long as *Harrell* is the law, I do not believe Judge Womack is justified in his suggestion that evidence of "the appellant's access to the murder weapon" was admissible simply because it was "a relevant fact." Under *Harrell*, right or wrong, it is not enough that evidence of the missing rifle, the probativeness of which *in this trial* depended upon the inference that the appellant is the one who took it, was minimally relevant. Under *Harrell*, it was not admissible unless the inference was strong enough that a jury would be justified in drawing it to a level of confidence beyond a reasonable doubt. While this may well illustrate the dubiousness of our holding in *Harrell*, that question has not been briefed and is not before us today.

- the appellant (along with many others) had access to the gun cabinet;
- the appellant had fallen into disfavor with the victim, his aunt;
- the appellant had motive and opportunity to commit the murder; and
- the victim apparently knew her assailant.

I have my doubts that the circumstantial evidence would support a jury verdict beyond a reasonable doubt that the appellant committed the murder absent more compelling evidence that he was the one who stole the rifle. And without evidence beyond a reasonable doubt that the appellant was the murderer, I do not think there is evidence sufficient to support a rational conclusion—to a degree of confidence *beyond a reasonable doubt*—that the appellant stole the rifle. The Court's reasoning is alarmingly circular.

In any event, the court of appeals never passed upon the question whether *all* of the evidence would support a jury conclusion beyond a reasonable doubt that the appellant stole the rifle. This Court should not pass on that question in the first instance, since we address only "decisions" of the courts of appeals.[7] If it may fairly be said that this issue is raised in the appellant's appellate briefs, I would direct the court of appeals to address it, if necessary, on remand. Because the Court improperly addresses it for the first time on discretionary review, I dissent.

### III.

A trial court does not err to admit evidence on the basis of conditional relevance, under Rule 104(b), contingent upon the proponent later "connecting it up."[8] The opponent of evidence conditionally admitted must, if he is to preserve error for appeal, make an objection at the conclusion of the evidence that the condition has not been established, and ask for an instruction to the jury that it disregard the unconnected evidence.[9] The appellant appears to have made no such objection or request in this case.

Issues of error preservation are "systemic" and should be addressed by first-tier appellate courts whether raised by the parties or not.[10] The court of appeals reversed the appellant's conviction in this cause without addressing the issue of error preservation. In our remand to the court of appeals, we should direct it to address the question, if necessary,[11] whether the

---

7. *E.g., Stringer v. State,* 241 S.W.3d 52, 59 (Tex.Crim.App.2007).

8. "Simply put, a trial judge cannot err in most cases by overruling a relevancy objection so long as the challenged evidence might be 'connected up' before the end of trial. * * * And it is not the judge's duty to notice whether the evidence is eventually 'connected up' in fact. Instead, the objecting party must reurge his relevancy complaint after all the proof is in, ask that the offending evidence be stricken, and request that the jury be instructed to disregard it. Otherwise, his objection will be deemed forfeited on appeal." *Fuller v. State,* 829 S.W.2d 191, 198–99 (Tex.Crim. App.1992); "A waiver may occur . . . if the opponent fails to renew his original objection by a motion to strike at an appropriate time, usually the close of the proponent's case."

Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, 1 TEXAS PRACTICE:GUIDE TO THE TEXAS RULES OF EVIDENCE § 104.2 (3d ed.2002), at 41; *Huddleston, supra,* at 690, n. 7, 108 S.Ct. 1496, *quoting* 21 CHARLES A. WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5054, pp. 269–270 (1977).

9. *Id.*

10. *Archie v. State,* 221 S.W.3d 695, 698 (Tex. Crim.App.2007); *Haley v. State,* 173 S.W.3d 510, 515 (Tex.Crim.App.2005).

11. If any of the appellant's remaining points of error should prove to be meritorious, then of course there would be no point in the court of appeals addressing whether the instant point of error was properly preserved for appeal.

appellant has preserved the claim that the trial court erred to admit the extraneous offense evidence on the condition that the State prove he committed it beyond a reasonable doubt under Rule 104(b). Because the Court fails to incorporate this requirement into its remand order, I dissent.