

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-0574-19

**ADRIAN VALADEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE TENTH COURT OF APPEALS
McLENNAN COUNTY

KEEL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, NEWELL, WALKER, and MCCLURE, JJ., joined. YEARY, J., filed a dissenting opinion in which SLAUGHTER, J., joined. KELLER, P.J., concurred.

## O P I N I O N

During the guilt phase of Appellant's jury trial for third-degree possession of marihuana the trial court admitted over various defense objections evidence of extraneous drug incidents. The jury found Appellant guilty as charged and sentenced him to five years in prison and a fine of $8,500. The court of appeals affirmed, holding that the trial court did not err in admitting the evidence of the extraneous incidents. *Valadez v. State,*

No. 10-17-00161-CR, 2019 Tex. App. LEXIS 3934, at *1 (Tex. App.—Waco May 15, 2019) (mem. op., not designated for publication).

We granted review to consider whether the extraneous drug evidence was admissible under the doctrine of chances or under Texas Rules of Evidence 404(b) and 403. We hold that the evidence was inadmissible under the doctrine of chances because the extraneous incidents and the charged offense were not highly unusual or exactly the same. And even if Rule 404(b) might have justified the admission of extraneous drug incidents, Rule 403 required their exclusion because they were unsupported by competent evidence; and even if they had been otherwise admissible, some were misleading and/or prejudicial in other ways. Consequently, any probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury under the peculiar facts of this case. We reverse the judgment of the court of appeals and remand to that court for a harm analysis.

## I. The Trial

Appellant was the only backseat passenger of a car that was occupied by two other men and traveling northbound on I-35 outside of Waco when it was stopped for a window-tint violation.

Trooper Juan Rodriguez, a member of the Department of Public Safety's drug interdiction team, testified that upon approaching the car, he noticed the smell of marihuana. He tried to put the car's occupants at ease by telling the driver, Jose Aguillon, that he was going to give him a warning for the window-tint violation, but the

effort to put them at ease failed. When they were out of the car, Aguillon was fidgeting, and the front seat passenger, Johnny Penaloza, explained that the flakes of marihuana on his shorts were actually "linen," but he meant to say "lint." Meanwhile, Appellant pretended to sleep in the back seat, and when he got out of the car he faked a yawn, avoided eye contact with Rodriguez, and took a "felony stretch." Aguillon and Penaloza also stretched which Rodriguez opined is a way to expel nervousness.

After backup arrived Rodriguez searched the car and discovered that the odor of marihuana was even stronger in the backseat, which he rated a seven or eight on a scale of ten. He found marihuana flakes on the front seat and blunts in the ashtray. A continuously ringing cell phone was in the console. When he opened the utility door to the trunk from the backseat the smell increased to a ten out of ten. Over 18 pounds of marihuana were in the trunk. Most of the marihuana was in two duffle bags, and the remainder was in the spare tire wheel well. The duffle bags also contained dirty clothes and an open pack of t-shirts that matched the t-shirt worn by Aguillon.

The occupants of the car gave inconsistent answers about how long they planned to be in Waco. Aguillon said they would be there for only a few hours whereas Appellant said a couple of days. All three occupants claimed they were going to visit girls in Waco but none named any girls they knew there. Rodriguez testified that drug runners commonly rehearse a story about the destination and purpose of their travels but stumble on the details when pressed for more information.

The car's occupants did not seem surprised that they were being arrested. At

first, all three denied any knowledge of the marihuana, but Aguillon and Penaloza ultimately pled guilty to possessing the marihuana. Appellant claimed he was an innocent passenger but seemed to relax after the marihuana was found. Rodriguez testified that drug mules do not take innocent passengers along for the ride; everyone in the car is truly involved. Drug runners tend to use two or more drivers on a run because time is money. "If the car ain't moving, they are not making money. It's a hurry up and go, get to the point, drop off, go back, load back up, and go."

Agent Christopher Dale, an investigator in DPS's Criminal Investigations Division, testified over hearsay objections that Appellant and his two fellow passengers refused to cooperate with his post-arrest effort to interview them to discover the marihuana's destination. The amount of marihuana found was a distribution amount, and people who run drugs do not bring innocent passengers with them. He expressed the opinion that the case against the car's three occupants was "pretty solid" because they "were in care, custody, and control of the bundles of marijuana that were in the car." All three knew or should have known there was criminal activity in the car because of the odor in it.

After a hearing outside the jury's presence the trial court admitted over various defense objections evidence of extraneous drug incidents as sponsored by McLennan County Sheriff's Department Captain Steve January and Austin Police Department Detective Christopher Thomas. Appellant asked for and received various running objections, including under Rules 404(b) and 403, before the witnesses testified about the

extraneous drug incidents.

January testified before the jury that Appellant had a 2009 conviction from Travis County for possession of marihuana weighing between two and four ounces. He sponsored the admission of State's Exhibit 8, the purported judgment of conviction, and identified the fingerprint on it as Appellant's.

Thomas testified before the jury that APD records—the nature of which he was not asked to describe—showed six instances where Appellant was "connected with" marihuana:

| Prosecutor: | Okay. And have you had an occasion—well, let me ask you this. Have you looked into the Austin PD records on Adrian Valadez? |
|---|---|
| Thomas: | Yes, I have. |
| Prosecutor: | And you did that at our request. Correct? |
| Thomas: | Correct. |
| Prosecutor: | And can you tell this jury when Adrian Valadez has been connected to marijuana? |
| Thomas: | Yes. There are one, two, three, four, five, six cases with APD that he was connected with marijuana. |
| Prosecutor: | Okay. And is that the only narcotic that this defendant has been associated with? |
| Thomas: | No. |

Thomas then testified about Appellant's possession of "cocaine" and marihuana in 2014.

In that instance Thomas and his patrol partner, Officer Edward Boudreau, pulled

Appellant over for running a stop sign. Thomas testified that Boudreau approached the car, smelled marihuana, and observed that Appellant "had a piece of paper that he was rolling up the marijuana with." In the dash-cam video, however, Boudreau narrated that he had found marihuana flakes in the car and marihuana in a folded, paper Notice to Appear in another marihuana case; he did not say that Appellant had been rolling marihuana in a piece of paper.

Upon his own search of the car, Thomas found a plastic bag containing what he said was 27.6 grams of "cocaine." Thomas testified that the "cocaine" was packaged in one big, plastic bag and that this amount signified to him that Appellant was "a dealer." He agreed with the prosecutor's characterizations that it was a "giant lump" of "cocaine" that "hadn't been cut up to even be handed out to end users yet[.]" On re-direct the State played around thirteen minutes of the dash-cam video for the jury and stopped it minutes after the marihuana was found and immediately after the "cocaine" was found.

The State offered no competent evidence to prove that the substance was indeed cocaine.

The defense called Aguillon as its only witness. Aguillon testified that he had pled guilty and accepted responsibility for the marihuana. He stated that Appellant did not know about the marihuana, and Appellant was not there when he and Penaloza put the marihuana in the car. He admitted on cross-examination that this was the only time he had brought along an innocent bystander on a drug run.

Appellant requested and the trial judge denied a limiting instruction in the jury

charge relative to the extraneous drug incidents.

## II. Character Evidence and Evidence of Extraneous Misconduct

Character evidence is generally inadmissible because it may "weigh too much with the jury" and encourage it "to prejudge one with a bad general record and deny him the fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 476 (1948). It is inadmissible "to prove that on a particular occasion the person acted in accordance with the character or trait." Tex. R. Evid. 404(a). Specifically, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). This rule prohibits admission of evidence to prove a person's character "from which the trier of fact is then to infer that the person acted in conformity with that character trait on the occasion in question." *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004) (footnote omitted).

"[T]he propensity to commit crimes is not a material fact in a criminal case[.]" *Segundo v. State*, 270 S.W.3d 79, 87–88 (Tex. Crim. App. 2008). But extraneous misconduct evidence may "be admissible if [it] is logically relevant to prove some other fact" than character propensity. *Johnston*, 145 S.W.3d at 219 (footnote omitted). Evidence of extraneous misconduct must tend to enhance or diminish the probable existence of a fact of consequence in the case. *Id.* at 219 n. 9. Even "a small nudge toward proving a fact of consequence" satisfies relevancy. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) (footnote omitted).

A fact of consequence may be "either an elemental fact or an evidentiary fact from which an elemental fact may be inferred." *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016). Extraneous misconduct evidence may be admissible to rebut a defensive theory that negates an element of the charged offense. *Johnston*, 145 S.W.3d at 219; *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (footnote omitted).

Similarity is crucial to the doctrine of chances. The admissibility of evidence under the doctrine of chances depends on a showing of "highly unusual events [that] are unlikely to repeat themselves inadvertently or by happenstance." *De La Paz v. State*, 279 S.W.3d 336, 347 (Tex. Crim. App. 2009). In *De La Paz* extraneous drug deals were admissible under the doctrine of chances where the accused police officer defended himself against charges of perjury and tampering with evidence on grounds that he saw things seen by no one else present at the scene. *Id.* at 347–48. The extraneous drug deals and the one underlying the charged offenses shared distinctive details: De La Paz's confidential informant planted fake drugs near innocent people, but De La Paz recorded in his offense reports that he saw the contact or delivery between the CI and the victim, whereas others present did not see the contact or delivery. *Id.* at 341–42. The repetitions of these "highly unlikely events" were an "extraordinary coincidence" rendering De La Paz's claims about what he saw objectively unlikely. *Id.* at 348.

Extraneous misconduct evidence must be proven beyond a reasonable doubt and by competent evidence. *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008) (requiring proof beyond a reasonable doubt); *see King v. State*, 765 S.W.2d 870, 872

(Tex. App.—Houston [1st Dist.] 1989, no pet.) (noting that Rule 404(b) does not render hearsay admissible over objection). On request, the jury should be instructed that it can only consider extraneous misconduct evidence if (1) it believes beyond a reasonable doubt that the defendant committed such misconduct and (2) then only for the limited purpose for which it was admitted. *Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001). The failure to request a limiting instruction when the evidence is admitted will relieve the trial court of its duty to give the instruction in the written charge. *Delgado v. State*, 235 S.W.3d 244, 254 (Tex. Crim. App. 2007). But the beyond-a-reasonable-doubt instruction relative to extraneous offenses must be included in the written charge if it is requested at that point. *Varelas*, 45 S.W.3d at 631.

Evidence of extraneous misconduct that is admissible under Rule 404(b) may be inadmissible under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. The particular phrases implicated here are "probative value," "unfair prejudice," and "misleading the jury."

"'[P]robative value' means more than simply relevance." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). It instead "refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* If the proponent "has other compelling or undisputed evidence" to prove the fact, then the item's probative value "will weigh far

less than it otherwise might in the probative-versus-prejudicial balance." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g)).

"Unfair prejudice" means "a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* Evidence may be unfairly prejudicial if it prompts "the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.*

"Misleading the jury" means a risk that the evidence would be given undue weight for reasons other than emotional ones; an example is scientific evidence that a jury is not equipped to judge. *Id.*

In sum, as pertinent here, a court must balance the probative force of the proffered evidence and the proponent's need for it against any tendency of the evidence to suggest decision on an improper basis and any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate its probative force. *See id.* at 641–42. Rule 403 requires the exclusion of relevant evidence only when there is a clear disparity between its probative value, on the one hand, and its prejudicial or misleading effect, on the other. *See Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996) (requiring a clear disparity between probative value and degree of prejudice).

## III.   Standard of Review

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). There is no abuse of discretion if the trial court's ruling is within the zone of reasonable

disagreement. *De La Paz*, 279 S.W.3d at 343–44. A decision to admit extraneous misconduct evidence is within that zone if the evidence is relevant to a material, non-propensity issue, and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *Id.* at 344.

## IV. Court of Appeals

In determining that the extraneous incidents in this case were admissible under Rule 404(b), the court of appeals stated that they were sufficiently similar to the charged offense because they all involved drug possession. *Valadez*, 2019 Tex. App. LEXIS 3934, at *19. The trial court's ruling was not outside the zone of reasonable disagreement because Appellant opened the door to the extraneous misconduct evidence during voir dire, opening statement, and cross-examination of the State's witnesses by advancing his innocent passenger defense. *Id.* at *19–20. The court of appeals held that there was not a clear disparity between the danger of unfair prejudice and the evidence's probative value, and so it affirmed the trial court's decision admitting the evidence. *Id.* at *23 (applying *Gigliobianco*, 210 S.W.3d at 641–42).

## V. Analysis

The doctrine of chances did not justifiy the admission of the extraneous incidents because they were not highly unusual or exactly the same as the charged offense. The incidents were inadmissible for a variety of reasons other than their extraneous character, and any weight given to inadmissible evidence is undue weight, so the incidents were misleading under Rule 403. *See Gigliobianco*, 210 S.W.3d at 641 (noting that

"misleading the jury" means a risk that evidence would be given undue weight for reasons other than emotional ones). Even setting aside their wholesale inadmissibility, the six connections to marihuana were also misleading because they invited the jury to speculate about their meaning, and the "cocaine" aspect of the 2014 arrest was prejudicial because it was a harder drug. Compared to the permissible purposes for which the incidents were offered, their probative value was slight; the State had other compelling evidence to support its case; and the jury's consideration of the extraneous incidents was unguided by any instruction. Under these circumstances any probative value was substantially outweighed by the danger of misleading or prejudicing the jury.

## A. Doctrine of Chances

The State does not cite the doctrine of chances in defense of the admission of the extraneous incidents. It argues that the court of appeals did not rely on it, either. But the court of appeals cited a doctrine-of-chances case in support of the admission of the evidence, *Valadez*, 2019 Tex. App. LEXIS 3934, at *20 (citing *De La Paz*, 279 S.W.3d at 347–48), so we address it in case it would uphold the trial court's ruling. *See Spielbauer v. State*, 622 S.W.3d 314, 319 (Tex. Crim. App. 2021) (citation omitted) (holding that a trial court's ruling must be upheld on any applicable theory). It does not. The evidence was not admissible under the doctrine of chances because the extraneous incidents were not highly unusual or exactly the same as the charged offense.

The marihuana-only incidents were offered with no details; they were generic rather than distinctive or "highly unusual." *Cf. De La Paz*, 279 S.W.3d at 347 (noting

that admissibility of evidence under doctrine of chances depends on showing of "highly unusual events"). The "cocaine"/marihuana arrest was different from the charged offense. In the extraneous incident Appellant was driving alone in a neighborhood in central Austin with a little bit of marihuana and a lot of cocaine in the passenger compartment of his car. In the charged offense Appellant was a backseat passenger in a car occupied by two others on the highway near Waco with no cocaine at all and a lot of marihuana in the car's trunk.

Nothing about the charged offense and the extraneous incidents marked them as distinctly similar or unusual, much less exactly the same, so the doctrine of chances did not support the admission of the extraneous drug evidence. *Cf. Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016) (referencing the doctrine of chances in rejecting a challenge to extraneous offense evidence that was "exact same situation" as charged offense).

**B. Otherwise Inadmissible**

The extraneous incidents were all inadmissible for reasons other than their extraneous character, and some of these reasons were brought to the trial court's attention via defense objection, as noted below.

The "judgment" showing a misdemeanor conviction for possession of marihuana was not sponsored by a witness who could authenticate it, nor was it self-authenticating. *See* Tex. R. Evid. 901(a) (requiring "evidence sufficient to support a finding that the item is what the proponent claims it is."); *id.* at 902(1), (2) (designating as self-authenticating

those domestic documents that are sealed and signed or signed and certified).

The connections to marihuana were testified to by Thomas who had no personal knowledge of those connections but who recited them—"one, two, three, four, five, six"—from an unidentified document that was not admitted into evidence and was rank hearsay as far as the record shows. *See id.* at 602 (conditioning witness testimony on showing of personal knowledge); *id.* at 801 (defining hearsay); *id.* at 802 (stating general rule against admission of hearsay). The defense objected to Thomas's testimony about the connections on confrontation grounds and on grounds that he had no personal knowledge about them.

The "cocaine"/marihuana arrest was inadmissible for several reasons, all but one of which were brought to the trial court's attention. First, it was irrelevant because it post-dated the charged offense; Appellant's exposure to the odor and appearance of marihuana in 2014 would have no logical force in showing his familiarity with it in 2012. Second, the marihuana odor attending the 2014 arrest was unsupported by a wtiness with personal knowledge of it; Thomas testified that Boudreau smelled it, but Boudreau did not testify; Appellant did not object on this basis. Third, Appellant's possession of "cocaine"—even if better timed—would not tend to show that he recognized or possessed marihuana on another occasion. Fourth, the "cocaine" aspect was unproven by a lab report or expert testimony, so the conclusion that the substance was indeed cocaine was inadmissible. *See Fischer*, 268 S.W.3d at 558 (requiring extraneous offense to be proven beyond a reasonable doubt); cf. *Zone v. State*, 118 S.W.3d 776, 777 (Tex. Crim.

App. 2003) (holding evidence legally sufficient to show possession of cocaine where chemist testified to having confirmed presence of cocaine in a scientific sampling of rocks).

The extraneous incidents were all inadmissible for reasons independent of their extraneous nature. Since they were inadmissibile, they were due no weight, and any weight given them was undue. That means they were misleading for purposes of Rule 403. *See Gigliobianco*, 210 S.W.3d at 641.

## C. Otherwise Misleading

The connections with marihuana were also misleading because they were too vague to support any inference. Thomas testified that Appellant was "connected with" marihuana in APD records, but the phrase was undefined. It might have meant that Appellant possessed marihuana or was reported to possess it or something even more attenuated than that. From the jury's point of view, there was no showing, much less a clear one, of what, if anything, Appellant did in any of his connections with marihuana. *See Plante v. State*, 692 S.W.2d 487, 494 (Tex. Crim. App. 1985) (holding in a case pre-dating the Rules of Evidence that evidence of an extraneous transaction was inadmissible for lack of "clear showing" that Plante participated in it). Such vagueness invited the jury to guess about the meaning of the evidence. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) (noting that speculation will not support a finding beyond a reasonable doubt). Speculation is misleading.

## D. Probative Value vs. Risks of Misleading and Prejudicing the Jury

The probative value of the extraneous incidents relative to the permissible purposes for which they were offered was slight; the State had other compelling evidence to prove its case; and the jury was given no instruction about its consideration of the disputed evidence.

## 1. Permissible Purposes

The State asserted three permissible purposes for admitting the extraneous misconduct evidence:   to demonstrate Appellant's familiarity with the odor of marihuana, rebut Appellant's innocent-passenger defense, and show a lack of mistake. But it relied on the sheer volume of the marihuana incidents and the amount of "cocaine" to demonstrate probative value, arguing at trial, for example, that it wanted "to show that on many occasions, multiple occasions, before and since, this defendant is connected to marijuana[,]" and that "he has dealt with dealer quantities or distribution quantities of a narcotic."

Even on appeal the State merely asserts that the extraneous incidents were "clearly relevant" and "circumstantial evidence" of intent and knowledge and "not mere propensity evidence[.]"   State's Brief, p. 31.   It resorts to the volume of incidents as demonstrating probative value when it argues that the extraneous offense evidence "cast considerable doubt" on the defensive theory "as it showed multiple prior incidents where he possessed marijuana, as well as having secreted illegal drugs in a vehicle."   *Id.* at p. 32.

But the State has failed to articulate how the evidence was probative apart from

showing propensity, and the evidence itself reveals little probative value, if any, apart from that. For example, no evidence showed that any odor attended any of the six connections with marihuana; they were admitted without any such detail. As for the 2014 "cocaine"/marihuana arrest, Appellant's possession of cocaine would not prove his familiarity with marihuana, and as already discussed, the timing of the arrest robbed it of logical relevance.

**2. Other Compelling Evidence**

The State had other compelling evidence to prove its case against Appellant. He "was practically sitting on top of a distribution amount of marihuana that reeked to high heaven." *Id.* at p. 30. The State also proved that marihuana flakes and blunts were in plain view in the passenger compartment of the car, drug dealers do not typically invite "innocent passengers" to ride along on drug deliveries, Appellant was especially nervous during the traffic stop but seemed to relax after the marihuana was found, and his story about visiting Waco for a couple of days was belied by his lack of clothing and toiletries corresponding with such a stay and by Aguillon's contradictory characterization of their plans. Since the State had other compelling evidence of guilt, the probative value of the extraneous drug evidence was less weighty than it otherwise might have been. *See Gigliobianco*, 210 S.W.3d at 641.

**3. No Instruction**

Finally, the jury was equipped with no instruction conditioning its consideration of the extraneous drug evidence on its belief beyond a reasonable doubt about Appellant's

commission of those extraneous incidents or limiting its consideration of the evidence to a permissible purpose. Regardless of whether the trial court had to give any such instruction, the lack of instruction is relevant to the prejudice assessment. *See Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (citation omitted) ("A manner of lessening the prejudice from the extraneous offense is to give a limiting instruction.").

## E.   Rule 403 Conclusion

Under these circumstances—the admission of incompetent, vague, logically irrelevant, voluminous, extraneous-incident evidence untethered by a limiting or burden-of-proof instruction—any probative value from the extraneous incidents was substantially outweighed by the danger of misleading or prejudicing the jury, and the trial court abused its discretion to admit it.

## VI.   Reply to the Dissenting Opinion

We reply with three points.

First, the dissenting opinion resorts to the "sheer number" of extraneous incidents as a source of probative value. But volume alone cannot conjure probative value; no matter how great it might be, any number multiplied by zero still equals zero. The six connections with marihuana were so meaningless that they could not support any inference, and it was logically impossible for events in 2014 to have retroactively enhanced Appellant's "sophistication" about anything in 2012, notwithstanding the dissent's bare assertions to the contrary. Merely repeating the phrase "logically relevant" does not make it so.

Second, the dissenting opinion overlooks the meaning of "misleading the jury" as used in Rule 403: it means a risk that the disputed evidence would be given undue weight for reasons other than emotional ones. *Gigliobianco*, 210 S.W.3d at 641. The disputed evidence here was inadmissible—a point the dissenting opinion does not address—and inadmissible evidence is due no weight, so its probative value was substantially outweighed by the certainty and not merely the risk that it would mislead the jury.

Third, the dissenting opinion mistakenly asserts that we are "importing" previously "unpresented" and "irrelevant" admissibility issues into our Rule 403 analysis. In fact, however, Appellant raised meritorious objections to the otherwise-inadmissible nature of all the extraneous incidents except the purported misdemeanor conviction. Specifically, he objected to Thomas's lack of personal knowledge about the connections with marihuana, "the false impression" of at least the first connection because it was "a case that nobody knows anything about," the irrelevance of the 2014 arrest because of its timing, the conclusory testimony about the "cocaine," and the irrelevance of "cocaine" in a marihuana case. The trial court overruled these objections in the course of overruling Appellant's Rule 403 and 404(b) objections, and Appellant challenged those rulings on appeal. The dissent cites no authority or rationale for its claim that Appellant also had to raise freestanding points of error about the otherwise-inadmissible nature of the extraneous incidents in order for this Court to address his Rule 403 claim. Given the airing of the admissibility issues in the trial court, we conclude that nothing more was

required.

## VII.   Harm

Appellant argues in the spirit of judicial economy against a remand for a harm analysis and in favor of this Court confronting the question in the first instance.   The State counters that the court of appeals is the proper venue for first consideration of harm. In cases where the proper resolution of the remaining issue is clear, we will occasionally dispose of the case in the name of judicial economy.   *Davison v. State*, 405 S.W.3d 682, 691–92 (Tex. Crim. App. 2013) (citing *Johnston*, 145 S.W.3d at 224).   But it's not clear here.   Nor, however, is it clear that the court of appeals did not already address harm because of the cases it cited in addressing Rule 403 and its mistaken reference to the admission of other extraneous drug evidence without objection.

The court of appeals expressed skepticism that the extraneous drug evidence in this case posed a risk of confusing or distracting the jury or prompting the jury to give undue weight to the disputed evidence.   *Valadez*, 2019 Tex. App. LEXIS 3934, at *22–23.   It dismissed those concerns because of other evidence linking Appellant to the marihuana "and because Captain January and Detective Thomas also testified [without objection] about other extraneous drug offenses that Valadez was involved in[.]"   *Id.* The court followed its claim about the admission of unobjected-to extraneous drug evidence with citations to two cases suggesting that the point of its claim was to address harm.   *Id.* at *23.

The first case it cited was *Leday v. State* with a parenthetical quote, "[O]verruling

an objection to evidence will not result in reversal when other such evidence is received without objection, either before or after the complained-of ruling." *Id.* (citing 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). *Leday* pointed out that the rationale for no reversal under such circumstances was either waiver or harmlessness, and expressed doubt about the waiver rationale. *Leday*, 983 S.W.2d at 718 ("It seems doubtful that a waiver of an objection was intended in all cases in which a defendant objects to some but not all of the State's evidence of a fact—at least in the sense that 'waiver' is often used in criminal litigation."). The remaining rationale was harm. *Id.*

The court of appeals' reliance on *Leday*, then, suggests that its purpose in referring to other, unobjected-to, extraneous drug evidence was to address any possible harm from the admission of the disputed evidence. Its second cite supports that reading. Introduced with a "see also" signal, *Washington v. State* was cited with the parenthetical explanation that "error in admission of evidence may be rendered harmless when substantially similar evidence is admitted elsewhere without objection[.]" *Valadez*, 2019 Tex. App. LEXIS 3934, at *23 (citing 485 S.W.3d 633, 638–39 (Tex. App.—Houston [1st Dist.] 2016, no pet.)).

Given its citations to *Leday* and *Washington*, it is arguable that the court of appeals did indeed hold the extraneous drug evidence to be harmless. But half of its stated rationale for doing so—the unobjected-to admission of testimony by January and Thomas about "other extraneous drug offenses"—was unfounded because no such evidence was admitted without objection. A hearing was held outside the jury's

presence to address the admissibility of the extraneous drug evidence, and Appellant was granted running objections to January's and Thomas's extraneous drug testimony based on, among other things, Rules 403 and 404(b). Since all the extraneous drug evidence was admitted over objection, any harm from its admission must be assessed without reference to the other-similar-evidence-admitted-without-objection rationale. *See Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005) (noting that subsequent objections to the admission of evidence are not required when the trial court entertains objections and rules outside the jury's presence or when counsel gets a running objection).

On the other hand, the court of appeals mentioned the unobjected-to extraneous drug testimony in the context of the admissibility of the disputed evidence, and Appellant disclaims any harm analysis having been entertained by the court of appeals. So it is unclear whether the court of appeals addressed harm. Since it is also unclear whether the admission of the extraneous drug evidence was harmful, we remand this case to to the court of appeals for a harm analysis.

**VIII. Conclusion**

The court of appeals erred in affirming the trial court's admission of the extraneous drug evidence. The purported conviction for possession of marihuana, the six connections to marihuana, and the "cocaine"/marihuana arrest had little if any probative value, and that was substantially outweighed by the danger of unfair prejudice and misleading the jury. We reverse the judgment of the court of appeals and remand the case to that court for a harm analysis.

Delivered: March 30, 2022

Publish